The opinion of the court was delivered by
McEnery, J.
The City Oouncil of New Orleans gave legal’notice •of its intention to cause the paving of Ursulines street from North Claiborne to Broad street, in order that the property holders, under Act 142 of 1894, might select, within the legal delay, the material with which the street should be paved, and the imposition upon them of the proportion of their assessments in accordance with said act.
The ordinance authorizing the pavement of the street, designated twenty-one feet as the portion of the street to be occupied by the tracks of the Orleans Railroad Company, which was about to reconstruct its tracks on said street, the paving to be on either side of the tracks of the said railway company.
The plaintiff property holders on said street enjoined the paving of the same. The advertisement for a contract had been made, and the contract entered into under a later ordinance, when the injunction was obtained.
There is no conflict as to the manner or mode of the contract, or the regularity of the proceedings of the council.
The objections urged are that the city had no right to designate neutral ground in the centre of said street; that it had no right to take up the cobble-stones on said street, and that the ordinance was illegal, the city having no right to order the repavement of a street. The street had been partially paved with cobble-stones. But we will assume that it was paved with cobblestones from curb to curb in its full length. The city has full plenary power over the streets. This is explicitly delegated by the General Assembly in the charter granted to the city. We have so often stated that it is unnecessary to cite authorities to support *1442 the assertion, that the City Council, in the exercise of its control and supervision of the street, can designate the part to be occupied by a street railway company. In this case it designated the centre of the street to be occupied by the railway street company with its consent. And, we may state here, the acceptance of a new route, designated in place of a former one, will not relieve the company from its obligations to the city to keep the street in repair. The location having been selected at the request of the railroad, even if it should change from one street to another its obligations would remain unaffected by the authorized change, except perhaps, it might be in the abandonment of the old route, and a payment of a price for the new franchise. This is not made a matter of complaint in the part of the record brought here, but it is argued in the briefs.
The objection that the city has no authority to order the re-pavement of a street is totally untenable. The general power given to the city to control the use of the streets, to improve and police them, necessarily carries with it the authority to pave them. This can not be restricted to unpaved streets. To repave is to pave. The streets may become impassable from old and worn-out pavements, or those in existence, although they may be in good repair, may be of such character as to fall behind the improved methods of pavements, which modern comfort and convenience demand.
The city charter and the act amendatory thereto give the property holders on the streets the right to demand.the pavement or repavement of a street, and thus force to action an inert and non-progressive city government.
Section 32 of the city charter accords to the property holders on a street, where one-fourth the number shall demand it, the paving of an unpaved street by the City Council. The City Council is without discretion to deny the demand. Sec. 33 accords the same right to property holders to have a paved street repaved.
In either case the council can not refuse to comply with the demand unless the same, after the publication has been made, is met with the opposition of a majority of the property holders. And in both cases the property holders have the right to designate the kind of material to be used in the paving of the street. Section 37 gives the City Council the power to order the pavement or repavement of any street. Its discretion can not be controlled, and it is beyond judicial power to interfere with it.
*1443 The city charter provides for the action of the property holders when the Council fails to move in the paving of an unpaved street, or the renewal, or the putting down of a new pavement. Section 37 is but a reaffirmation of the Oity Oouncil’s control of the streets, and vests in it the power, “in its discretion,” to provide for the paving or banquetting of any street or portion thereof at the expense of the whole city, and to force from the proprietors of lots fronting on the streets a specific local assessment.
The sections 32 and 33, which provide for the petitioning of property holders for paving unpaved streets, or renewing or repairing of pavements, impose the entire cost on the property holders, while Sec. 37, which empowers the council to move in the matter of pavement on its own motion, charges the cost of pavement to the entire city and the property holders on the paved streets.
Act 142 of 1894 has direct reference to Sec. 37 of the city charter. It applies to the pavement of streets which the council orders to be improved on its own motion and in its discretion. It is an amendment of Act 119 of 1886, which was an act to amend Sec. 37 of Act No. 20 of 1882, which is the city charter. The amendatory act makes only two changes in the amended act, and provides for the payment of paving banquettes and sidewalks, and gives to the property holders, a majority in number and measurement on the street, the right to designate the kind-of material to be used. The Oity Council of New Orleans, in its discretion, has the power to order the pavement or repavement of any street in the city. Its discretion can not be controlled by judicial power, unless it should be so arbitrarily exercised as to demand that protection which all courts grant when positive and unnecessary injury is inflicted. But such is not likely to occur in the paving of streets and their improvement in other ways, which promote convenience, and comfort and health. The ordinance requiring the pavement of Ursulines street is valid, and the proceedings under the same are regular in all respects.
It is claimed by defendants that they are entitled to the value of the cobble-stones taken from the street. They have received the benefit of their value in the contract with the parties to whom it was adjudicated. The stones are to be reduced in size and used in the reconstruction of the street. It would be impractical for the city to dispose of the stones and to return to each property holder his proportion of the value. When they were placed in the street at the *1444 cost of the property holders it was a contribution to the public, and they became the property of the city for the use of the public.
There is in the record a petition in the way of an intervention of the property holders, a majority in number and measurement, who oppose the demand of'plaintiffs and join with the city in its defences.
This dispenses with the objection to the want of ninety days’ time in .which the majority of the tax property holders in amount and measurement] have to designate the kind of material with which <¡he street shall be paved.
Judgment affirmed.