ATKINSON *v.* TOWN OF DECATUR.

[95 South. 689.  No. 23160.]

1. MUNICIPAL CORPORATIONS. *Municipality must keep streets in reasonably safe condition for travel.*

   A municipality is not divested of all control over such of its streets as may be improved and maintained by the county under the provisions of chapter 255, Laws 1914 (section 7179, Hemingway's Code), and it is not relieved of its duty to the public to keep such streets in a reasonably safe condition for travel.

2. BRIDGES. *Municipality cannot escape liability for injury by defective bridge on streets by reason of assumption of jurisdiction thereover by county officers.*

   A municipality cannot escape liability for an injury caused by a defect in a bridge on one of its public streets by reason of the fact that, acting under the provisions of chapter 255, Laws 1914 (section 7179, Hemingway's Code), the board of supervisors of the county and the highway commissioners of a special road district have, with the consent of the mayor and board of aldermen of such municipality, assumed jurisdiction over such street, and are maintaining the same as a part of a public road of the county.

APPEAL from circuit court of Newton county.

HON. G. E. WILSON, Judge.

Suit by Jeff Atkinson against the Town of Decatur. From a judgment dismissing the suit, plaintiff appeals. Reversed and remanded.

*Boyd & Boyd,* for appellant.

The statute which permits municipal authorities to allow the construction of roads into the municipality where the municipality is in a good roads district is as follows: "Any public highway being constructed, improved and maintained under the provisons of chapter 149, of the Acts

of 1910, or under chapter 257 of the Laws of 1912, or under any of the various methods of building good roads authorized by law of the state of Mississippi, where the same shall run or extend into or through any incorporated municipality within the district or districts operating under said act may be constructed, improved and maintained, the same within as without the corporate limits of said municipality; provided, however, that with the consent of and in conjunction with the commissioners provided for in said act the said municipality may, out of its own funds, add such street crossings, or make improvements as it may desire. Provided the mayor and board of aldermen shall, by an order spread upon the minutes, consent for the work to be done by the commissioners. "Section 7179 of Hemingway's Code.

Now there is no mention in this statute of any relief from laibility for any municipality which permits these streets to be worked by others. In other words, municipal corporations are charged with the duty of keeping their streets and bridges in a safe condition for the traveling public and they cannot delegate this duty and the legislature never authorized the delegation of this duty or permitted it in the above statute. This is the only statute touching on the subject.

Our position, if the court please, is this, that no matter who built the road and bridge in question the town of Decatur was under a duty, which it could not delegate or shuffle off by permitting some one else to do the work and have charge of the improvement.

In 13 R. C. L., page 332, we find the following:

"As between a municipal corporation and the public, the duty to keep the streets and highways in a reasonably safe condition for travel rests primarily on the corporation, and cannot be evaded or suspended by any act of the municipality nor can it be delegated to another so as to relieve the municipality from liability for injuries resulting from its breach."

And again at page 355 of the same volume (13) : "It may be stated as a general rule that a duty imposed either expressly or by implication on a municipal or *quasi*-municipal corporation to keep its streets and highways in a reasonably safe condition for public travel cannot be delegated so as to relieve it from liability for injuries resulting from the nonperformance thereof . . . Similarly, a city is not relieved from liability for failure to keep its sidewalks in a reasonably safe condition because the walk is built by a private citizen with its permission."

In 28 Cyc., at page 1344, is the following: "The duty of a municipal corporation to keep its streets in repair and in a safe condition for travel, when it has once arisen, cannot be delegated; as by entering into a contract under which a third person assumes the duty."

And again, at page 1355 of the same volume 28: "If it is the duty of a municipality to keep its streets in repair . . . it cannot escape liability for injuries occasioned by an unguarded excavation or other defects of which it has notice, even though made by an independent public officer in the performance of his duty. The liability is not based upon the act or omission of such officer, but upon the duty of the city as to streets."

We wish the court to bear in mind that the statute under which the defendant claims immunity from liability is not mandatory at all but is entirely optional with the municipal authorities and that if the right to build these roads into the town is given, it is purely a voluntary act on the part of the municipal authorities. But, on the other hand the duty that a municipality owes to the traveling public is imperative and binding, that it must furnish streets and bridges in a reasonably safe condition for travel. This duty cannot be delegated, see authorities *supra*. As well said in 28 Cyc. 1355, the liability of a town is not based on the act or omission of an officer charged with the duty of keeping the streets and bridges in repair and safe for public travel, but is based upon the duty of the city to keep

its streets in a safe condition. That is a nondelegable duty.

But the appellee says that inasmuch as chapter 176 of the Laws of 1914, require the board of supervisors to build and maintain all bridges costing above twenty-five dollars that it necessarily follows that the jurisdiction of the town is ousted and that the town's duty therefore ceases. But we submit that there is nothing in the acts relied on which relieve the town authorities of their duty to see that these streets and bridges are in a safe condition. Under the common law the municipality owed the traveling public the duty of keeping its streets in a reasonably safe condition for travel, and there is not a statute changing that duty, therefore that is still the law of Mississippi. Surely this court would not sanction the writing into these statutes something that the legislature never wrote there when the laws were enacted, to-wit: "And when said streets are turned over to said commissioners, the municipal authorities are relieved from all liability that may arise on account of any defects in streets." But, if the overruling of this demurrer is sustained, then that is what the court must, in effect, do.

But our friends on the other side argue that because the Constitution gives the board of supervisors full jurisdiction of all roads and bridges under their control, then this law allowing the good road bridges to be turned over to them places all roads and bridges under their exclusive jurisdiction whenever the necessary order turning them over has been passed. But in this contention we do not believe they are sustained by the law. The authorities above cited all•hold that no matter to whom the control of streets is given by a municipality, they cannot delegate to that person or that body the duty to keep these streets in a reasonably safe condition for public travel. Suppose, for the sake of argument that they are right, what would the effect be? Practically every municipality in the state of Mississippi is a part of a good roads district and prac-

tically every municipality has streets which are but con-
tinuations of good roads in these districts. Then, by a
simple order spread on their minutes the mayor and board
of aldermen would or could turn over jurisdiction of
practically all of their main thoroughfares to road com-
missioners and the town would be absolutely relieved from
all liability and an injured party, who suffered injuries
on account of defects in these streets would be deprived of
his remedy because under the law a suit cannot be main-
tained against the county or board of supervisors for any
injury thus occasioned. Surely this could not be the law,
as the statutes are now. As before said in this brief, this
court must sanction the writing into these statutes of
something that is not there. And if it should sanction
this, then it would be taking away from persons injured
any remedy whatever for the wrongs suffered.

We submit that in view of these authorities quoted and
the authorities cited by them, the proposition is clear that
a municipality cannot turn over to other parties or other
bodies, the care and control of its streets and relieve itself
of all liability thereby. The duty it owes to the traveling
public is one that is non-delegable and cannot be avoided
in any event, we submit, except by direct legislative enact-
ment, which is not the case here.

We respectfully submit that the action of the lower court
in overruling the demurrer to the special plea was erro-
neous and that this cause should be reversed and remanded.

*D. M. Anderson* and *C. E. Johnson,* for appellees.

There is no Mississippi statute fixing express liability
on a municipality for failure to keep its streets and bridges
in repair but this liability has existed because the towns
have had power to keep in repair. *Bell* v. *West,* 51 Miss. 263.
There being no express statutory liability, it does not re-
quire an express direct statute to remove this liability,
where the power or jurisdiction is removed, because it has

been based on existence of power. The power is the reason for imposing liability and when the power is removed, necessarily the liability is removed. And, therefore, although no express statute directly on this liability was passed by the legislature, there was none before the acts affecting this case were passed. Section 3338 of Code 1906, section 5835, Hemingway's, gives the mayor and board of aldermen the jurisdiction they have over the streets; it is a mere act of the legislature; the legislature also created the town, that is, provided for its creation, without which the town could not exist, making it a creature of the legislature, and all such laws shall be subject to repeal or amendment. Mississippi Constitution, section 88. Full control is in the legislature, and they may add to the powers of the mayor and board of aldermen, or take from their power or jurisdiction, any street they have by law given them full jurisdiction over. When jurisdiction is taken away, it necessarily affects the town's liability *in tort.* In this connection we call the court's attention to the following, quoted from 19 R. C. L., page 114, section 394:

".  .  . The rights and powers of a municipality are subject to the will and control of the legislature, and it lies within the power of the legislature to take the control of some municipal department out of the hands of the municipality and turn it over to some board of state officers. When this has been done, upon rudimental principles of justice the municipality cannot be held liable for the negligence of such officers, regardless of the nature of the function which they are administering. So also when the performance of a duty imposed upon a municipality by law, and for neglect in which it is civilly liable, is interfered with and prevented by an officer of the state or by persons acting with authority from the state, the municipality cannot be held liable for its failure to perform the duty."

Our legislature provided a method of building and maintaining good roads, in chapter 176, Laws of 1914, and amendments thereto; said chapter 176, amends chapter 149, Laws of 1910, which also provided a method, and which is expressly included in chapter 255 of Laws of 1914, section 7179, Hemingway's Code, in effect when this law was acted under by the town of Decatur as set forth in the said special plea demurred to. It was wise that the legislature provided in said chapter 255, Laws of 1914, Road District No. One, Newton county, which had constructed and improved, the part of the Newton and Decatur good road on which the bridge in question was located, under the very method and plan referred expressly to in above Act of 1914, chapter 255. Under this act it was lawful for the county to take charge and do the constructing in the district under chapter 176, Laws of 1914. They had the power to take charge of the part which had been a street, they did so take charge and retained charge of this road, a part of their good road, including the bridge. They were maintaining it as a district and county road. The town having consented for the commissioners to build and maintain the road, had surrendered their jurisdiction over the road and it became just as any other county road, under the full jurisdiction of the board of supervisors of Newton county, who under the said chapter 176 and amendments might act through the commissioners. This full jurisdiction is recognized in the act itself, for if the town ever afterwards did any improvement from its own funds on it, add anything, it must be with the consent of and in conjunction with the commissioners, and it is further provided that by order the mayor and board of aldermen have to consent for the work to be done by the commissioners, it being our view of this statute that it is required that all work be done by the county and district through the commissioners. Section 170, of the Mississippi Constitution provides:

"The board of supervisors shall have full jurisdiction over roads, ferries, and bridges, to be exercised in accordance with such regulations as the legislature may prescribe, and perform such other duties as may be required by law." Whenever it has been shown that a statute places this jurisdiction elsewhere our court has held the statute unconstitutional.  *Seal* v. *Donnelly,* 60 Miss. 658; *Holmes County* v. *Black Creek Drainage Dist.;* 99 Miss. 739, 55 So. 963.

There is no question from the statutes that the district and county, had a right to take over the road and bridge in question for improvement and maintenance as a good road under chapter 176 aforesaid, and under chapter 255, Laws of 1910, section 7179, Hemingway's Code.  As we see it, no consent by the mayor and board of aldermen was necessary to enable the district and county to improve into the town; but it is stated in the plea that an order was passed and spread on the minutes, and that thereafter the commissioners and board of supervisors took over and improved the road, and supervisors built the bridge. Section 20, of Laws of 1914, chapter 176 provides:

"It shall be the duty of the board of supervisors out of the county funds to build all bridges in districts coming under this act the cost of which exceeds twenty-five dollars, and to keep the same in repair."  The bridge complained of was a bridge in the district built by the board of supervisors, and therefore the duty to keep it in repair was expressly put on the supervisors.

The conclusion seems inescapable that the road and bridge became a county road and bridge; and that the district commissioners and county supervisors obtained jurisdiction such as the constitution vests in the board of supervisors, which, as is shown above, is full jurisdiction. Then if full jurisdiction was in the board of supervisors, the legislature could only regulate its exercise by them, and could not permit the mayor and board of aldermen to exercise it independent of the supervisors; then whatever

the mayor and board of aldermen could legally do would be and was an act of the board of supervisors through them and to hold the town liable for the act or omission of the board of supervisors having full jurisdiction and the mayor and board of aldermen having no jurisdiction would work an injustice, we do not believe the court will sanction in this case.

The town authorities have lost their jurisdiction, but it was done by legislative provision, for the promotion of the convenience and for the benefit of the traveling public, and not to avoid damage suits, as suggested, not to escape liability for torts. But the duty formerly upon the mayor and board of aldermen to maintain the bridge in a reasonably safe condition for public travel did not exist at the time complained of on the road and bridge complained of—the jurisdiction formerly full in town authorities, was then full jurisdiction in the board of supervisors, and this removed the reason for holding the town liable *in tort,* and besides the duty was definitely and expressly placed on the board of supervisors to keep the bridge in repair. They had full and therefore exclusive jurisdiction to repair and the duty to repair definitely and expressly placed upon the supervisors by the legislature which had full power to do so. In the case of *Seal* v. *Donnelly,* 60 Miss. 658, the court said: "The right to deal with these subjects cannot be taken from them and confided to any other magistracy." In discussing a case where a ferry was involved, and the constitutional power was the same as to ferries as it is in the present case as to roads and bridges, and it was the board of supervisors jurisdiction which was under consideration. The legislature can regulate the exercise of jurisdiction by the board of supervisors over roads and bridges, but cannot take it from the supervisors and place it in any other board or body. Chapter 255, Laws of 1914, provides:

"Any public highway being constructed, improved and maintained under the provisions of chapter 149, Laws of

1910" (which was amended by chapter 176, Laws of 1914) where the same shall run into or through any incorporated municipality within the district—operating under said act may be constructed, improved and maintained the same within as without the corporate limits of said municipality."

So when the town of Decatur complied with the consent provision, the road and bridge involved in the case became a county road and county bridge under the board of supervisors; then under the Constitution, section 170, the supervisors' jurisdiction over them was full, and after that the right to exercise jurisdiction over them could not by the legislature be confided to the mayor and board of aldermen of Decatur, or any other magistracy. The town after that had no jurisdiction over the road and bridge as such, and hence owed no duty to the traveling public using them, including plaintiff Atkinson. The duty was in the board of supervisors by express provision of the statute to keep the bridge in repair, since its cost exceeded twenty-five dollars. Not having any right to repair, and not attempting to keep it in repair the town is not liable in this case. The court therefore did not err in overruling the demurrer, because the plea presented a defense in law.

COOK, J., delivered the opinion of the court.

The appellant instituted suit in the circuit court of Newton county against the city of Decatur, appellee, seeking to recover damages for personal injuries alleged to have been sustained by him on account of a defective bridge on one of the public streets of the town. The appellee filed its plea of the general issue, and also a special plea, averring, in substance, that the town of Decatur is an incorporated municipality within special road district No. 1 of Newton County; that the alleged defective bridge is located on a street of said municipality which is a part of the Newton and Decatur public road; that this public

road was built into said municipality, and along said street, by the board of supervisors of Newton county and the highway commissioners of said road district, that the said road district was organized under the provisions of chapter 176 of the Laws of 1914, and amendments thereto, and the alleged defective bridge was built by the said road commissioners, under the supervision of the board of supervisors, at a cost of more than twenty-five dollars; that at the time of the alleged injury and for some time prior thereto the said street and road had been maintained wholly by the said highway commissioners under the direction and supervision of the board of supervisors; that the mayor and board of aldermen of the town of Decatur, by an order on the minutes of such board, had consented for such road and bridge to be constructed and maintained by the board of supervisors and highway commissioners, and that the town owed plaintiff no duty to maintain and keep in good repair the said bridge or road for the reason that the duty so to do was wholly upon the county and road district authorities. The plaintiff demurred to this special plea on the ground that it presented no defense, and this demurrer was overruled. The plaintiff declined to plead further, and final judgment dismissing the suit was entered, and from this judgment this appeal was prosecuted.

Can a municipality escape liability for an injury caused by a defect in a bridge on one of its public streets by reason of the fact that, acting under the provisions of chapter 255, Laws of 1914 (section 7179, Hemingway's Code), the board of supervisors of the county and the highway commissioners of a special road district have, with the consent of the mayor and board of aldermen of such municipality, assumed jurisdiction over such street, and are maintaining the same as a part of a public road of the county? The road district within the boundaries of which the appellee, town of Decatur, is located was organized under the provisions of chapter 176 of the Laws of 1914, and the act under which the board of supervisors and the highway com-

missioners undertook to improve and maintain this street as
a part of the county road system is chapter 255, Laws of
1914 (section 7179, Hemingway's Code), which reads as
follows:

"Any public highway being constructed, improved and
maintained under the provisions of chapter 149 of the
Acts of 1910, or under chapter 257, of the Laws of 1912,
or under any of the various methods of building good roads
authorized by law of the state of Mississippi, where the
same shall run or extend into or through any incorporated
municipality within the district or districts operating un-
der said act may be constructed, improved and maintained
the same within as without the corporate limits of said
municipality; provided, however, that with the consent
of and in conjunction with the commissioners provided for
in said act the said municipality may, out of its own funds,
add such street crossings, or make improvements, such as
grading, culverts, graveling or other improvements as it
may desire. Provided the mayor and board of aldermen
shall, by order, spread upon their minutes consent for the
work to be done by the commissioners."

Under section 3330, Code of 1906 (section 5827, Hem-
ingway's Code), a municipality organized under and gov-
erned by chapter 99, Code of 1906, is constituted a sep-
arate road district with power to compel the male inhab-
itants of such municipality, within certain ages, to per⁄
form labor on the streets, or in lieu thereof to pay a com-
mutation tax, and under section 3338, Code of 1906 (sec-
tion 5835, Hemingway's Code), the mayor and board of
aldermen are granted full jurisdiction in the matter of
streets, to open, lay out, and construct the same, and to
repair, maintain, pave, sprinkle, adorn, and light the same,
and as a necessary incident to this power there is imposed
on the municipality the duty to keep its streets in repair
and in a reasonably safe condition for travel. As between
the municipality and the public this duty rests primarily
on the municipality, and it cannot be delegated so as to

relieve it from liability for injuries resulting from the nonperformance of the duty.   13 R. C. L., pp. 332 and 355; 28 Cyc., pp. 1344 and 1355.

We recognize the power of the legislature to divest a municipality of control over its streets, but in enacting chapter 255, Laws of 1914 (section 7179, Hemingway's Code), we do not think it was the intention of the legislature to divest municipalities affected thereby of all control over their streets and relieve them of their duty to the public to keep their streets in a reasonably safe condition for travel.   While the act authorizes a municipality to consent for its streets to be improved and maintained by the county authorities, there is nothing in the act expressly relieving such municipalities of all duty in respect to such streets, but, on the contrary, express provision is made for the municipality, out of its own funds, to make such improvements thereon as it may desire, and we think it is clear that it was not the intention of the legislature to relieve such municipality of liability for a failure to perform its duty to keep its streets in a reasonably safe condition for travel.

It follows from the views herein expressed that the demurrer to the special plea should have been sustained, and therefore the judgment of the court below will be reversed, and the cause remanded.

*Reversed and remanded.*