OVERTON, J.
 

 Plaintiffs are residents and taxpayers of the city of New Iberia, and own property therein, abutting on Main street, between Weeks street and Lewis avenue. The city of New Iberia has taken steps to pave the section of Main street on which plaintiffs own property; that is to say, the section between Weeks street and the avenue mentioned. Plaintiffs oppose the paving by the city of that part of Main street, and, moreover, contend that the manner in which the city is proceeding is contrary to law, and will, if carried out, work great injury
 
 *785
 
 to them. ’ They have therefore brought suit against the city to obtain relief by injunction.
 

 Plaintiffs allege that in July, 1924, together with other property owners owning property abutting on the section of Main street indicated, they addressed a petition to the board of trustees of New Iberia reading as follows:
 

 “TVe, the undersigned property owners fronting East Main street, in the city of New Iberia, with 'respect show that said Main street is part and parcel of the Old Spanish Trail, the Pershing Highway, the Jefferson Highway, and the Transcontinental Highway, and is the exclusive outlet for all travelers along these routes, and is used mostly by outside travelers.
 

 “Eor the above reasons it is nothing but fair that the improvement of said East Main street should be made by the state highway department, with state and federal aid as applied fot by your body; that it is unfair and unjust that the contemplated paving of East Main street be made by the property owners abutting the same.
 

 “We therefore petition your honorable body to delay your present paving program until such time as proper and equitable relief be granted your petitioners in the premises.”
 

 The petition then sets out that, acting upon a prior petition, the board of trustees of the city requested aid from the state highway department for the paving of that part of Main street heretofore indicated; that the department did not act upon the request, but that the state highway engineer answered, advising the board of trustees that, at the time at which he wrote, there were no available funds for the paving of said street, intimating that at some future time the department would grant the request.
 

 The petition then alleges that, notwithstanding that 80 per cent, of those owning property abutting on the section of Main street, which the city had undertaken to pave, had petitioned the board of trustees to delay the paving until equitable relief could be granted them by the highway department of the state, and that, notwithstanding the fact that the board of trustees had demanded state aid for the paving of Main street, the board of trustees ordered publication of the ordinance providing for said paving, and that the ordinance was accordingly published.
 

 The petition then declares that, immediately after the publication mentioned, an affidavit made by eight of the electors of the city, among whom were the plaintiffs herein, declaring that it was their intention to circulate and present a petition for a referendum, with respect to said ordinance, was presented by the affiants to the board of trustees, and that, true to the declaration made in said affidavit, the affiants circulated a petition for a referendum, and obtained thereon the signatures of more than 20 per cent, of the number of votes cast at the last election for a board of trustees for said city, and duly and timely presented said petition to, and filed it with, said board.
 

 The petition then alleges that under the charter of said city, which is Act 187 of 1910, it is the mandatory duty of the board of trustees, upon the filing of such an affidavit, and upon the presenting and filing of a petition for a referendum, to reconsider and repeal the ordinance against which protest is made, but that, regardless of said duty, the board is still persisting in having the same published and in calling for bids for the paving of said section of said street, all in utter disregard of the property rights of plaintiffs, and of the wishes, request, and demand of over 20 per cent, of the electors of said city.
 

 The petition then sets out that the ordinance providing for said paving is null and void, for the reason that it is based on Act 23 of 1914 and Ordinance No. 109 of said city, when, in truth and in fact, Act 23 of 1914, which is an amendment to the charter of New Orleans, and Act 31 of 1915, which
 
 *787
 
 is an enabling act, authorizing municipalities of a certain class to adopt, in substance, as a part of their charters the amendment to the charter of New Orleans, were repealed by Act 69 of 1916, before the adoption of Ordinance No. 109, and before its approval by the Attorney General and prior to its recordation in the office of the secretary of state.
 

 The petition also alleges that the paving of said section of Main street, that is, from Weeks street to Lewis avenue, will not be of actual benefit to them or to the remaining residents of said city, unless the entire street is paved to the end of the corporate limits, and that to pave said section only is a discrimination against plaintiffs and in favor of the remaining property owners on Main street from Lewis avenue to the end of the corporate limits.
 

 The prayer • of the petition is that a rule nisi issue directed to said board of trustees and to each member thereof, ordering them to show cause why an injunction should not issue commanding said board to consider and repeal said paving ordinance, and restraining said board and each member thereof from proceeding further with the publication of the same, from finally adopting said ordinance, from advertising for bids for the paving of said section, from letting any contract therefor, from paving said section of said street, and that said injunction, after hearing had, issue accordingly. The petition closes with a prayer for general relief.
 

 The trial court issued the rule nisi, as prayed for by plaintiffs, and, for reason why the injunction prayed for should not issue, defendants excepted to plaintiffs’ petition, averring that the petition disclosed neither a cause nor a right of action.
 

 The rule was tried on the- pleadings filed, and judgment was rendered recalling the rule and denying the writ of injunction. From this judgment plaintiffs have appealed devolutively to this court.
 

 The foregoing is a brief outline' of plaintiffs’ petition. In order to bring out more clearly the grounds on which plaintiffs rely for a writ of injunction, it is necessary to state them briefly in another form. Based upon the allegations of their petition, these grounds are: (1) That the state highway department alone has power to pave Main street, for the reason that said street is a part of certain state highways; (2) that, as the city of New Iberia, through its board of trustees, has demanded of the state highway department aid for the paving of Main street from Weeks street to Lewis avenue, it is es-topped to deny the fact that said street is under the sole control and supervision of the state highway department; (3) that, in view of the petition for a referendum, it is the duty of said board not to proceed further with its intention to pave said section of said street, but its duty is to repeal the paving ordinance adopted by it; (4) that said paving ordinance is null and void, because it is based on an amendment to the charter, adopted by the board of trustees of the city, based on two acts of the Legislature, which were repealed before the adoption of the amendment to the charter; (5) that the paving of Main street from Weeks street to Lewis avenue will not be of actual benefit either to plaintiffs or to the remaining residents of New Iberia, unless Main street be paved to the corporate limits; (6) that it is a discrimination against those owning property on said street abutting on the section that the city proposes to pave, and in favor of those owning property abutting on the remainder of said street, to pave only the section which the city proposes to pave.
 

 Opinion.
 

 Plaintiffs refer us to Act 95 of 1921, which provides for the establishment and maintenance of a system of state highways, as supporting their position that a municipality cannot pave a street within its cor
 
 *789
 
 porate limits, when the street, which it desires to improve, has been selected as a part of the state highway system. The act, in establishing such a system, creates a state hignway commission, and vests the commission created with supervision and control over the system established, and the contention of plaintiffs seems to be that the effect of the selection of one of the streets of a municipality, as part of the state’s system of highways, and the vesting of supervision and control of that system in the commission, is to deprive the municipality, in which the street is located, of the power, which it formerly had, to pave the street selected. However, in our view, the position taken
 
 by
 
 plaintiffs is unsound. Where a street is so selected, its selection gives to it what might be termed a dual aspect; that is to say, it then serves two purposes, one as a link in the state’s highway system and the other as a street of the municipality. As a street, the municipality in which it is located still has power to pave it. On the other hand, if the municipality does not pave it, and it is necessary or proper to improve it, in the opinion of the state highway commission, in order to make it adaptable as a link in the state’s highway system, the commission has power to make the improvement. In other words, the control and supervision granted to the state highway commission over a street, as a link in the state’s highway system, was never intended by the Legislature to interfere with the municipality’s supervision over and control of the link, as one of its streets, and with its right to pave it, as such, nor to force the municipality to defer the paving until the state could furnish it with substantial aid to be used in doing the work.
 

 We also think that plaintiffs’ second contention, that is, the one that the city of New Iberia is estopped from denying that the state highway commission has sole supervision and control over the section of the street to be paved, because it requested aid of the commission, and hence, as we infer, has thereby lost power to pave the section, is unsound. It is manifest that a municipality cannot, in any such manner, be estopped or lose the power granted it by the state to pave a street or section thereof. To sustain the estoppel urged would not only call for a ruling that a municipality may lose, by making a request, the right to pave one of its streets or a section thereof, a ruling which would find no support in law or equity, but, moreover, in this instance, the request was perfectly consistent with the right which the city contemplated exercising — that of paving the section of the street named at the expense of those owning property abutting thereon, less the aid, if any, obtained from the state. Besides, it may be observed that the request was made at the instance, among others, of plaintiffs, which makes the reason all the stronger for not sustaining the estoppel.
 

 Plaintiffs’ third contention, as we have seen, is that the effect of the filing of the affidavit, declaring the intention of the electors filing it to circulate a petition for a referendum, and of the presentation of the petition itself to the board of trustees was to make it the duty of the board to repeal the ordinance, and, as the board has refused to repeal it, that plaintiffs are entitled to a writ of injunction, requiring the board so to do. Plaintiffs, however, in so contending, have fallen into error as to the effect of the filing of the affidavit and of the presentation of the petition, for, while the charter of the city of New Iberia grants the right of referendum, with possibly a few exceptions, on all ordinances, resolutions, and other enactments, passed by the city’s board of trustees, yet, assuming for the moment that the ordinance in question is subject to the referendum clause of the charter, still the
 
 *791
 
 effect of the filing of the affidavit and of the presentation of the petition was clearly not to make it the duty of the hoard to repeal the ordinance. The effect of the filing of the affidavit, assuming that the ordinance protested against is subject to the referendum clause of the charter, was merely to suspend the operation of the ordinance for 30 days from its publication, in order to give to the electors filing the affidavit an opportunity to circulate a petition for a referendum. The effect of presenting the petition itself to the board of trustees, assuming that the ordinance is subject to the referendum clause of the charter, was to require the board to reconsider the ordinance, and, after reconsidering it, to do one of two things, to wit, either to repeal the ordinance or submit it to'the qualified electors of the city for approval or rejection. Section 15 of Act 187 of 1910, p. 296, which act is the charter of the city.
 

 However, we think that plaintiffs’ misconception in their pleadings of the effect of the filing pf the affidavit and of the presentation of the petition amounts to nothing; for, if the ordinance in question is subject to the referendum clause of the charter, plaintiffs would be entitled, nevertheless, to an injunction, for the board of trustees refuses to grant the referendum, and proposes to proceed with the paving, as if no referendum were necessary. We shall pass therefore upon the question, as to whether the ordinance is subject to the referendum clause; and, in fact, counsel for the board asks that we do so, and has briefed and argued his case accordingly.
 

 The ordinance in question, that is, the ordinance providing for paving, was passed under an amendment to the charter known locally as ordinance No. 109. The latter, that is, the amendment to the charter, was adopted under the authority of Act No. 31 of 1915, which is an act authorizing municipalities containing a population exceeding 2,500 to incorporate in their charters an amendment to the charter of the city of New Orleans, known as Act No. 23 of 1914, in so far as that act relates to streets or to sidewalks or to both, so as to confer upon such municipalities additional powers relative to-paving and repaving. The amendment adopted by the city- of New Iberia contains the substance of the Act of 1914 relative to the paving and repaving of both streets and sidewalks.
 

 The determination of the question, we think, depends upon whether Act No. 23 of 1914, in substance, so conflicts with the referendum clause of the charter of New Iberia that the incorporation of the substance pfi the act into the charter resulted necessarily in repealing that clause, in so far as concerns the exercise of the additional powers conferred by the incorporation of the act in the charter. The question is so dependent for determination, we think, because "the Legislature, in conferring authority upon municipalities to adopt such an amendment, did not expressly empower them, in adopting it, to repeal to any extent any referendum clause there might be in their charters. Hence, if any repeal resulted, it occurred because the incorporation of the substance of the act of 1914 into the charter of New Iberia could not be accomplished without repealing to some extent the referendum clause of the city’s charter. Therefore we shall examine the act of 1914 for the purpose of ascertaining whether or not its substance so conflicts with the conception of a referendum that to permit a referendum on an ordinance, passed pursuant to the provisions of the act, would impair necessarily the substance of the act, which substance, whether as to the paving or repaving of streets or sidewalks, the city was authorized to incorporate in its charter.
 

 The act, when passed by the Legislature
 
 *793
 

 and
 
 promulgated, empowered the commission council of the city of New Orleans, “upon its own motion,” to provide for the paving and repaving of any street or sidewalk or section thereof within its corporate limits. The act also, when it was passed and promulgated, required the commission council to pass an ordinance providing for the paving and repaving of any street or sidewalk, or section thereof, in the corporate limits, Whenever petitioned to do so by the owners of not less than 60 per cent, of the total frontage of property abutting on the proposed improvement, when there were not sufficient withdrawals from the petition, after a specified time, to reduce the property frontage owned by those still remaining on the petition below 60 per cent. Section 3 and subdivisions a, b, c, d, and e of section 1, Act 23 of 1914, pp. 67, 64, 65. The act contemplated that, when the council passed an ordinance of its own motion providing for paving or repaving, it should have the power to provide for the carrying of the work to completion of its own will; that is, without reference to who did or did not object, save as to the type of pavement to be constructed, with respect to which limited rights, pertaining to the selection of the type to be used, were given to those owning property abutting on the improvement. The act stressed the right of the council to initiate the work of its own motion, and by necessary implication, in like manner, to provide for the carrying of the work to completion. The act also contemplated that, when the owners of the required percentage of frontage on the proposed improvement petitioned for it, and. a sufficient number of them did not withdraw from the petition within a specified time, it became the duty of the council to provide, not only for the commencement of the work, but for the carrying of it to completion, whether the council wished to or not, and without reference to who did or did not object, subject only, and then by the construction which we now place upon the statute, to the ability of the city to pay its part of the cost in those instances in which a part thereof, such as the cost of repaving, fell upon it. In other words, the absolute right, subject only to the foregoing limitation, was given to the required percentage of property owners to foice the making of the improvement.
 

 The foregoing provisions are material parts of the act of 1914. It may be said that they constitute a part Of its essence. They, together with the substance of the remainder of the act, were incorporated, as we have seen, in the charter of the city of New Iberia. As they are material parts of the act, it was necessary, if the city adopted as part of its charter the substance of the act, that the city should include those provisions without material qualification in order to avoid a departure from the enabling act authorizing the amendment, which sanctioned the making of no substantial change in the provisions of the act in adopting those provisions. Now, the power conferred upon the board of trustees of the city of New Iberia, by the adoption of the substance of the act, to provide, of its own motion, for the paving and repaving of streets and sidewalks, and by necessary implication to provide,-of like motion, for the carrying of the work to completion, is in conflict with the power of the electorate to defeat by referendum the purpose and desire of the board to proceed with the work. The act contemplates, as necessarily does the amendment to the charter, that th^. power of the board shall be absolute in this respect. Likewise, the absolute right of the property owners owning 60 peícent. of the frontage on the improvement proposed by them to force the board to pass an ordinance providing for the improvement and to provide for the carrying of the work to completion, conferred upon them by the
 
 *795
 
 act incorporated in the amendment, is in conflict with the power of the electorate to force by a referendum the repeal of the ordinance passed by the board pursuant to the will of those owning the required percentage of frontage. Either the absolute right of the board, when acting of its own motion, must yield to the referendum clause of the charter or the referendum clause must yield to the absolute right of the board contemplated by the act of 1914 and by the amendment to the charter adopting the substance of that act. The same is true with respect to the absolute right of the property owners to force the council to pass ah ordinance providing for the improvement, and to provide for the carrying of the work to completion, that is to -say, either that right must yield to the referendum clause of the charter, or the referendum clause must yield to it. The referendum clause must give way in both instances. Were it otherwise, the city would have a system for providing for paving different in material respects from that contemplated by the act of 1914, which it was authorized to adopt.
 

 We now reach what may be termed plaintiffs’ fourth contention, that is, the one . that the ordinance, providing for the paving of the section of Main street, heretofore designated, is null and void, because it was adopted under an amendment to the charter, purporting to incorporate in the latter the substance of Act 23 of 1914, under the authority of Act 31 of 1915, when no legislative authority remained at the time for so doing, such authority having ceased to exist, because both the act which was incorporated in the charter and the enabling act, authorizing the incorporation, were repealed prior to the adoption of the amendment. The position is taken, therefore, that, as the amendment is null and void, the paving ordinance itself is necessarily so, as it has nothing on which to rest.
 

 When Act No. 23 of 1914 was passed by the Legislature, it served and was intended to serve but one purpose, and that purpose was to amend the charter of the city of New Orleans by authorizing that city, under certain rules and regulations, to provide for the paving and repaving of its streets and sidewalks. In 1915 the Legislature concluded that the powers conferred upon the city of New Orleans by Act 23 of 1914 would be of advantage to municipalities containing a population exceeding 2,500, but did not care to force this act upon- them. It therefore passed Act No. 31 of 1915 authorizing such municipalities to embody in substance in their charters Act No. 23 of 1914, as relates to either streets or sidewalks, or as relates to both so as to confer upon them additional power relative to paving and repaving. When the Legislature, by Act 31 of 1915, authorized municipalities, of the class mentioned, to incorporate in their charters Act 23 of 1914, it, to all intents and purposes, made the statute designated by it as much a part of Act 31 of 1915 as if it had literally incorporated the former in the latter. Therefore, from the moment of the adoption and approval of Act 31 of 1915 there were in existence, among the statutes of the state, two acts containing, in the main, similar provisions, but serving distinct purposes, one of which acts served only to amend the charter of the city of New Orleans in certain respects, and the other, which had incorporated into it, by reference, the provisions of the New Orleans amendment, served only to authorize other municipalities to incorporate those provisions in their charters. The Legislature has never expressly repealed Act No. 31 of 1915, but immediately prior to the adoption by the city of New Iberia of the amendment to its charter the Legislature, in amending the charter of New Orleans, by amending and re-enacting Act No. 23 of 1914, expressly repealed the latter
 
 *797
 
 act, 'which, as we have seen, was incorporated by reference in the act of 1915. If the act of 1915 has been repealed, it is simply because the act of 1914 has met with that fate. However, there is no reason to hold that, because the act of 1914 has been repealed, the act of 1915 was repealed also. The rule is that, “when a prior act is incorporated in a subsequent one in terms or by relation, the repeal of the former leaves the latter in force, unless also repealed expressly or by necessary implication.” 25 R. C. L. verbo “Statutes,” § 160. In this instance there is not the slightest suggestion of any intention anywhere in the statutes of the state to repeal the act of 1915. In fact, the intention of the Legislature is clear. It was to repeal the act of 1914 as an amendment tq the charter of New Orleans, for it dealt with the act only as such, and at the same time to leave intact the act of 1915, with the one of 1914 incorporated in it by reference. We therefore conclude that plaintiffs’ fourth contention cannot be sustained.
 

 We now reach plaintiffs’ fifth contention, or fifth ground for an injunction, which, as we have seen, is that the paving of Main street from Weeks street to Lewis avenue will not be of actual benefit to their property or to the residents of the city, unless the street b.e paved to the corporate limits.
 

 In their allegation setting forth this ground for an injunction, plaintiffs concede that the improvement will be. of benefit to their property if the paving be continued from Lewis avenue to the corporate limits. Why it will not be of benefit unless so continued they do not set forth. In this connection it may be said that the Legislature, in authorizing municipalities of a certain class, among which was the city of New Iberia, to incorporate in their charters the substance of Act 23 of 1914, authorized them, on doing so, to pave not only any street within their corporate limits but also a section of a street therein, and to apportion the cost of the improvement according to the front foot rule, and assess against each piece of property abutting on the improvement its proportion of the cost. The city of New Iberia, having incorporated in its charter the substance of Act 23 of 1914, as authorized by the Legislature, is thereby expressly empowered to pave one or more of its streets for their entire length, or a section of a street, as it sees proper, and to assess against each piece of property, abutting on the improvement, its proportion of the cost. This power necessarily carries with it the power to determine whether the contemplated improvement will be beneficial, in a given instance, to the abutting property, and imposes the obligation not to make the improvement, if it will not be beneficial. When, therefore, a municipality, in the exercise of such a power, undertakes to pave one of its streets, or a section thereof, it should be presumed to have found that the property abutting on the contemplated improvement will be benefited by it. This being so, if the courts would be justified in interfering at all by writ of injunction with the discretion thus exercised, it should be, not upon the mere allegation that the improvement will not be beneficial, but upon allegations showing facts which, if proved, will warrant the conclusion that the improvement will not benefit the abutting property. See, as bearing upon this question, Schmitt v. New Orleans, 48 La. Ann. 1440, 21 So. 24; Kelly v. Chadwick, 104 La. 719, 29 So. 295; Moody & Co. v. Spotorno, 112 La. 1008, 36 So. 836. The petition, in this case, as we have seen, contains no such allegations.
 

 With respect to the remaining ground upon which plaintiffs ask for an injunction, that is, the one that to pave only the section of Main street mentioned instead of paving the street for its entire length would be a discrimination against those owning proper
 
 *799
 
 ty abutting on the section to be paved, we think, possesses no merit. It not only frequently occurs that a municipality finds it advisable to pave only a section of a street instead of paving the street for its full length, but, in this instance, as we have had occasion to observe, the city has express power to so pave. If plaintiffs’ position is tenable, then, even if the city should undertake to pave the street from end to end, those owning property thereon might complain with equal reason that they were being discriminated against in favor of the owners of property on other unpaved streets, and as a result a municipality would have to pave all of its unpaved streets at once, or none. In such instances there is a discrimination, but it is one based upon reason, and is therefore not objectionable.
 

 For the foregoing reasons we are of the opinion that the trial judge was- correct in refusing to issue the writ of injunction demanded.
 

 The judgment appealed from is therefore affirmed, at plaintiffs’ costs.