MRS. D. P. SMITH, Appellant, v. CITY OF ALGONA, Appellee.

No. 45858.

SEPTEMBER 29, 1942.

James I. Dolliver and D. M. Kelleher, both of Fort Dodge, for appellant.

J. D. Lowe, of Algona, for appellee.

BLISS, J.—The injury to the appellant occurred on July 3, 1939, on Park Avenue, near the north limits of the appellee, a city having a population of about 4,000 people. Primary highway 169, which is a part of the road system of Iowa over which the state highway commission has complete supervision and control, is routed through Algona over four of its paved streets, one of which is Park Avenue, for a total distance of 7,575 feet. The highway enters the city from the south on Phillips Street, which it traverses northward for 3,300 feet, thence west on State Street, the main business street of the appellee, for 1,600 feet, thence north on Jones Street for 900 feet to where the latter street merges into and becomes Park Avenue,

thence due north on Park Avenue for 525 feet and 1,250 feet northwesterly thereon to the north city limits. This last 1,250 feet of Park Avenue is downgrade and through a pass under the C., M. & St. P. R. R. tracks. The appellant and her husband were coming into the city from the north on highway 169. The street, after it passes through the subway under the railroad tracks, turns rather sharply to the southeast up the hill. Immediately to the right of this paved turn, in the shoulder of the street, was a deep rut, into which the right wheels passed and caused the car to veer into the pole. The paving on Park Avenue along where the injury occurred and on up the hill was 18 feet wide. Farther to the south it was 24 feet wide, and at other places along the route of highway 169 through the city the paving was 30 feet wide.

Highway 169 is paved both north and south of the city with a concrete slab 18 feet wide. All of the streets traversed by 169 were graded and paved by the appellee in 1922, and, so far as the record shows, they were always thereafter maintained by the city until the year 1939. On November 15, 1938, the city council of Algona adopted the following resolution:

"Be It Resolved by the City Council of the City of Algona, Iowa.

"1. That pursuant to the provisions of Section 4755-b29 of the Code [1935] and Chapter 154 of the Laws of the 47th General Assembly of the State of Iowa, we hereby approve and consent to the maintenance of all primary road extensions within said City during the calendar year 1939, by the State Highway Commission, as hereinafter set forth.

"2. That the approval and consent herein given for the maintenance of said primary road extension within the said City of Algona is based on the assumption and understanding that said maintenance to be done by the State Highway Commission will be paid for by the State Highway Commission out of the primary road fund, and that no charge will be made against the City of Algona on account of such maintenance performed or to be performed by the State Highway Commission on the said primary road extensions within the said City of Algona.

"3. That the maintenance to be done by the State Highway Commission on the primary road extensions within the City of Algona shall include the usual surface maintenance, roadbed repairs, repairs to bridges, culverts and guard rail, and other maintenance usually performed on primary roads outside of cities and towns. That on streets or portions of streets which are curbed, the maintenance, except snow removal, shall extend from curb to curb. That the maintenance of such primary road extensions shall include plowing the snow from the full width of the pavement or other surfacing, providing that if the pavement or other surfacing is more than thirty feet in width, then the Highway Commission will plow the snow from a traveled way only about thirty feet in width.

"4. That the maintenance of such primary road extensions by the Highway Commission shall not include:

"(a) The loading and hauling away of snow which is placed off to the side of the traveled portion of the roadway.

"(b) The sprinkling of the streets.

"(c) The sweeping of the streets.

"(d) The maintenance or repair of any sewers, water pipes or other services under the traveled surface of the roadway or any costs incident thereto.

"5. That this resolution and the terms thereof shall become effective upon the approval and acceptance thereof by the Iowa State Highway Commission."

The chairman of the commission attached to the resolution the statement that it was approved and accepted by the commission on November 22, 1938.

The standard highway signs along the course of 169 through the city were furnished and placed by the commission prior to 1939. During 1939, prior to the date of the injury sustained by appellant, a broken portion of pavement along the route other than Park Avenue was repaired, and during freezing weather some of the slopes and approaches to intersections were sanded. There is no evidence that any other maintenance work was done on the streets over which 169 was routed during the year 1939.

The repair of the broken pavement above mentioned was in Call Street, which intersects the extension of 169 at a place

where the houses average much less than 200 feet apart, and where, under the second paragraph of Code section 4755.27, the commission had no right to make direct repairs, and could only reimburse the appellee for maintenance work which it had done. We have not checked the figures of appellant in her printed argument, but appellee does not question them, that from the intersection of State and Jones Streets north to the north city limits, a distance of 2,675 feet, there are 45 abutting houses and business houses, and for the whole course of 169 through the city (7,575 feet) the number of such buildings is 119, making an average distance between them in each instance of about 60 feet.

Highway 169 was simply a renumbering of highway 16 which was made a part of the primary-road system in April 1919, with the route through the city remaining the same.

Section 4755-b29 of the 1935 Code, and chapter 154 of the laws of the Forty-seventh General Assembly, pursuant to which the resolution of the city council was adopted, are, respectively, now section 4755.27, and section 4755.21 of the Code of 1939, and we will hereinafter refer to the sections by the latter designations.

Section 4755.21 is as follows:

"Improvements in cities and towns. The state highway commission is hereby given authority, subject to the approval of the council, to construct, reconstruct, improve and maintain extensions of the primary road system within any city or town, including cities under special charter, provided that such improvement shall not exceed in width that of the primary road system and the amount of funds expended in any one year shall not exceed twenty-five percent of the primary road construction fund.

"The phrase 'subject to approval of the council', as it appears in this section, shall be construed as authorizing the council to consider said proposed improvements in its relationship to municipal improvements (such as sewers, water lines, sidewalks and other public improvements, and the establishment or re-establishment of street grades). The location of said primary road extensions shall be determined by the state high-

way commission. [C24,§4731; C27, 31, 35,§4755-b26; 47 GA, ch 154,§1.]''

Section 4755.27 is:

''Maintenance. Primary roads outside of cities and towns and along the corporate lines of cities and towns shall be maintained by the state highway commission under the patrol system, and the cost of said work paid from the primary road fund. Extensions of primary roads within any town or within any city having a population less than twenty-five hundred, *or within that part of any city,* including cities under special charter, *where the houses or business houses average not less than two hundred feet apart, may be maintained by the state highway commission and the cost thereof paid out of the primary road fund.* [Our italics.]

''On extensions of primary roads within that part of any city having a population over twenty-five hundred, including cities under special charter, where the houses or business houses average less than two hundred feet apart, the state highway commission may make payment to the city from the primary road fund for maintenance work performed after this chapter becomes effective, in no event exceeding an average of three hundred fifty dollars per year per mile of such primary road extension. [C24,§4736; C27, 31, 35,§4755-b29.]''

The italicized part of the section just quoted is the only part thereof which can have any application to this case.

Appellant by her amended petition alleged where and how the injury was caused, and the extent and nature of those injuries; that along the right-hand side of the pavement, just south of the railroad underpass, there was a rut, next to the pavement, 6 inches deep and 75 feet long, which had been washed out by rains and water and the wheels of cars; that appellee had negligently constructed the pavement with an abrupt jog to the left as you go south, and had negligently permitted the rut to be and remain there, and caused the car in which appellant was riding to swerve from the rut against a pole carrying electric wires.

The questions for determination center about division II

of the appellee's second substituted answer, as amended. The facts are set out in the pleadings but are to be taken in the light of a stipulation of facts. The issues before us are issues of law arising upon a motion of the appellant to strike, directed at said division II. This division is intended as a separate and complete defense to appellant's cause of action. It alleged, in substance, that: (1) The highway where the injury occurred is a part of primary highway No. 169 lying within the corporate limits of the appellee and for a long time prior to the injury had been an extension of said primary highway and a part of the primary road system of the state; (2) consequently the part of the highway complained about was wholly under the control and care and within the jurisdiction of the state; (3) on the date of the injury and for a long time prior thereto the part of the highway complained of was being cared for and maintained by the state; (4) as provided by statute, an agreement, Exhibit A (the resolution) was entered into; (5) by reason of said facts the appellee was under no obligation for the maintenance and the care of said highway, and had no right to interfere with the highway commission's care and maintenance thereof, and cannot be indebted to appellant upon any matters set forth in her amended petition. By an amendment to division II, appellee added eight more paragraphs to it, setting out allegations of fact tending to support some of the conclusions of law in the preceding five paragraphs. The amendment alleged the course of the extension of the primary highway from the north city limits, under the railroad tracks, and up the Park Avenue hill; that the houses on this part of the extension averaged more than 200 feet apart; that as the extension proceeds southerly across the city there are places where the houses average more and places where they average less than 200 feet apart; that the commission maintained a garage and a patrol crew at Algona, and had erected standard signs along the extension prior to the time of the injury.

Appellant filed a motion to strike the whole of division II, alleging as grounds: (1) Because the matters set up and pleaded as a complete defense are insufficient to constitute a defense; (2) because the subject matter of the division as amended and in the light of the fact stipulation is predicated upon

the assumption that Exhibit A was sufficient to relieve the appellee from its duties and obligations under the statutes, and particularly Code sections 5945 and 5947, and because, as a matter of law, the alleged facts were insufficient for such purpose; (3) because the appellee had a population in excess of 2,500, and the pretended resolution or contract (Exhibit A) on its face shows that it is not a contract under or authorized by the second paragraph of Code section 4755.27, to pay the appellee from the primary-road fund for maintenance work; (4) that Exhibit A upon its face is not a contract for the commission to maintain primary roads only "within that part" of the city "where the houses or business houses average not less than two hundred feet apart"; (5) that Exhibit A, by its terms, if effective for any purpose, applies to the maintenance of all primary road extensions "within said city," and is not limited to "that part" where the houses or business houses average not less than 200 feet apart; (6) that Exhibit A is unauthorized by law, void, and not binding because it is not within the terms of any grant of authority contained in or within the purview or scope of section 4755.27; (7) that said purported maintenance agreement is not divisible in such respect that it can be valid in part and void in other parts; (8) that division II as amended fails to allege or show that Exhibit A applies only to that part of the appellee where the houses average not less than 200 feet apart, but on the contrary purports to cover all portions and the whole length of 169 within the city limits; (9), (10) because the matters sought to be stricken are surplusage and legal conclusions; (11) that the legislature having imposed upon appellee the care, supervision, and control of all public highways within the city and required the appellee to keep them open, in repair, and free from nuisances, appellee cannot be relieved of said statutory obligation by Exhibit A; (12) that the commission, under section 4755.27, had no legal authority to enter into such a contract as Exhibit A and such pretended contract is void and unenforceable; and, (13) there is no pleading or showing indicating any segregation or division of primary 169 or any other primary into sections or parts in order to determine the application of Exhibit A, nor is any such division contemplated or within its scope or purview. Appellant also

370

filed an alternative motion to strike, directed at division II, bearing upon the matters covered in the motion above set out.

The trial court ordered the motion "overruled in its entirety." With the ruling, it filed a "Review of the Case," but noted that the clerk of the court need not record it.

The appellant presents two assignments of error, the first being based upon the overruling of grounds 1, 2, 9, 10, and 11 of division I of her motion to strike, and the second being based upon the overruling of grounds 3, 4, 5, 6, 7, 8, 12, and 13 thereof.

I. The question for determination is one of statutory construction, or ascertaining the intention of the legislature in the enactments pertinent to the propositions submitted. The particular question is before the court for the first time. Its determination is a matter of importance to the public and to cities and towns.

The appellee contends that, considering the matter in the light of road legislation for the past 25 years, under the arrangement which it made with the highway commission in the contract-resolution, Exhibit A, and under the Code sections mentioned therein, it relieved itself of any duty or liability to the appellant under Code sections 5945 and 5947. It insists that, under primary-road-system legislation, the continuations or extensions of primary roads through cities and towns are parts of the primary-road system, and, in fact, are primary roads, and are not streets of such cities or towns. It therefore argues that sections 5945 and 5947 have been repealed insofar as they impose any duty, responsibility, or liability upon any city or town, with respect to the care, supervision, and control of its public highways, streets, or avenues, which the Iowa State Highway Commission elects to maintain as extensions of primary roads.

The appellant urges upon us that the propositions contended for by the appellee are each and all unsound, and without merit or the support of precedent or principle, and contrary to the proper construction of the applicable statutory provisions. We agree with the appellant.

Are the highways, roads, streets, and avenues of cities of the class of the appellee a part of the primary-road system? Sections 4755-b2, Code, 1935, and 4755.02, Code, 1939, expressly

say that they are not. They define the "primary road system" thus:

"The primary road system shall embrace those main market roads (*not including roads within cities and towns*) which connect all county seat towns and cities and main market centers * * * ." (Italics are ours.)

Sections 4644-c2, Code, 1935, and 4644.02, Code, 1939, say of the "secondary road system":

"The secondary road system of a county shall embrace all public highways within the county except primary roads, state roads, *and highways within cities and towns.*" (Italics are ours.)

The italicized exceptions have been in all legislation since the inception of the system of "primary," and "secondary," roads in Iowa, with the exception that in section 4689, Code, 1924, the parenthesis in the definition of the primary-road system was: "(not including roads within cities)." It is thus clearly apparent that the legislature, by its enactments, at all times has expressed its intention of classifying streets in cities and towns as a type of highways, other than and apart from primary and secondary roads.

In view of the repeated definite expressions of the legislature, as above noted, the use of the term "extension of the primary road system" cannot, in reason, be said to intend or mean that the extension is a primary road, or a part of the primary-road system. In some of the Codes, the word "continuation" is used instead of "extension," but the meaning is the same, and that is, that the street designated is the route of the primary road through the city or town—the connecting highway link between the primary road as it reaches the city limits on its approach and leaves them on its departure, but is not a primary road.

If the proposition of the appellee that the extension is a primary road, or is a part of the primary-road system, be adopted as the law, let us consider briefly the complications which may follow. Chapter 240.1, Code, 1939, contains statutory provisions looking to the establishment, construction, and maintenance of farm-to-market roads, which means any secondary road desig-

nated for improvement under the chapter. Code section 4686.21, in the chapter, is a combination of the provisions of sections 4755.21 and 4755.27, Code, 1939, relied upon by appellee. The section is entitled: ''Extensions in cities and towns'' and it has to do with any secondary road ''which is a continuation of the farm-to-market road system and which is * *. * (3) within that part of any city including cities acting under special charter, where the houses or business houses average not less than two hundred feet apart.''

Digressing for a moment, we also call attention to section 4644.45, Code, 1939, entitled ''County trunk roads in cities and towns.'' This section is also a combination of sections 4755.21 and 4755.27, Code, 1939, supra, relative to primary-road extensions in cities and towns. It is in chapter 240 of the Code, having to do with secondary roads. This section provides that the board of supervisors may purchase or condemn right of way therefor, and shall grade, drain, bridge, gravel, or maintain ''any road or street which is a continuation of the county trunk highway system, or a continuation of a county local road * * * (3) within that part of any city, including cities acting under special charter, where the houses or business houses average not less than two hundred feet apart.'' County trunk and local county roads are defined in section 4644.04, Code, 1939.

If the proposition asserted by the appellee, that the extension of a primary road into a city or town makes the extension a primary road, then, by the same reasoning, the continuation or extension of a farm-to-market road, or a county trunk road, or local county road, makes the extension the particular kind of a road which it happens to extend. There may then be four types of roads, under different supervision, in any city or town, and no one to whom recourse may be had in damages by anyone injured through the negligent maintenance of any such road. If two or more of these extensions coincide within a city or town street, who has the primary duty of care, the board of supervisors or the highway commission? Divided or multiple care usually means improper care.

The legislature has at all times placed upon cities and towns the duty and the responsibility of caring for its streets.

Section 5945, Code, 1939, is as follows:

"Duty to supervise. They shall have the care, supervision, and control of all public highways, streets, avenues, alleys, public squares, and commons within the city, and shall cause the same to be kept open and in repair and free from nuisances."

Section 5947, Code, 1939, reads thus:

" 'Roads' as streets. Such portions of all roads as lie within the limits of any city or town shall conform to the direction and grade and be subject to all regulations of other streets in such town or city."

These sections have been in every Code since they first appeared in the Revision of 1860. Ever since that time, this court has always held that because of section 5945 cities and towns have been in duty bound to exercise reasonable care to keep their streets and alleys in a reasonably safe condition. There has never been any statutory provision either expressly or impliedly relieving them of this obligation.

This obligation and duty was on the appellee on December 31, 1938, and it could not relieve itself of that duty and consequent liability for the "calendar year 1939" by shifting part of its statutory burden for that time upon the highway commission under the Exhibit A arrangement, even though there was statutory provision permitting the commission to assume that burden. There was no provision in Exhibit A, nor in the statute, which relieved the appellee of its obligation to keep its streets in a reasonably safe condition. This obligation was placed upon the appellee by the legislature, and it can be relieved of it only by the same high authority. It has never done so. Appellee repeatedly asserts in its argument that, since in section 4731, Code, 1924, the board of supervisors was given plenary jurisdiction to provide for extensions of primary roads in cities and towns, and that after their completion the extensions "shall be maintained by the city or town and such city or town *shall rest under the same obligation of care as to such improvements as is now provided by law for roads and streets generally*," and that thereafter the act so providing was repealed and was re-enacted without mentioning such "obligation of care," cities and towns were thereby relieved of any liability under section 5945, where the highway commission assumed the

maintenance. We find no merit in this contention. The italicized portion of the above quotation must necessarily have referred to the "obligation of care" imposed by section 5945, because by no other section was such an obligation imposed. The reference to the obligation of care was simply a reaffirmance of the liability imposed by section 5945, and not the imposition of any new liability. The obligation of section 5945 has never been repealed.

It is our judgment that neither under the sections of the statute relied upon by the appellee nor under Exhibit A, was the appellee relieved of the duty of reasonable care which it owed the appellant under section 5945 with respect to the proper maintenance of Park Avenue.

The appellee relies upon both sections 4755.21 and 4755.27. It is difficult to reconcile them. Appellee insists that everything provided for in Exhibit A is authorized by section 4755.27. Under that part of the first paragraph of the section which we have italicized, it argues that the commission was authorized to maintain that portion of Park Avenue where the houses were more than 200 feet apart. And it insists that the second paragraph of the section, which provides that the commission may reimburse the city for maintenance, up to a specified amount, on any part of the extension where the houses are less than 200 feet apart, amounts to nothing more than an arrangement whereby the commission may hire the city to do such maintenance work. Under either paragraph, appellee insists there is no liability on the part of the city. Appellee's construction of the second paragraph is not persuasive. Certainly, if the city maintains such streets or parts thereof, it cannot avoid liability for negligence in doing so. But the appellee also contends that if the provisions of Exhibit A cannot be wholly performed as to the entire extension within the city under section 4755.27, it can be done under section 4755.21, which section it insists permits the commission to do maintenance work, alone, on any extension of a primary road anywhere in any city or town, provided it keeps within the limitations stated therein. Whether this is a correct construction of the section is very questionable. Appellant suggests that this section might well be construed as limited to maintenance of extensions *constructed* by the commis-

sion, and to have no application to extensions on streets where the pavement had been constructed by the city, as was done by the appellee. The matter is not free from doubt, and we do not deem it necessary to pass upon it in view of our conclusion that the decision must be reversed because the appellee was not released from the obligations of section 5945, regardless of the provisions of section 4755.21 or 4755.27, and Exhibit A.

But we call attention to the fact that any maintenance by the commission, under either or both sections, is limited to the width of the street not in excess of a primary road. In other words, it is limited to a width of 18 feet. Such was the width of the pavement on 169 both north and south of the appellee. While the pavement of Park Avenue is but 18 feet wide along where the injury occurred, the remainder of the avenue and the greater part of the other streets followed by 169 were paved to a width of 24 feet or more. Thus, even under the theory of the appellee, the width of the streets in excess of the width of a primary road, for the greater part of the route through the appellee would be under its control, supervision, care, and maintenance, and it would be liable in damages for any injury caused by its neglect in these matters. Furthermore, there are limitations on the amounts which the commission may expend in maintenance. If these limited amounts should be insufficient for proper maintenance, the city would then be required to furnish such maintenance as was needed. Under the theory of appellee, the maintenance of the streets of the appellee designated as the route of 169, would be under the divided supervision, care, and maintenance of the city and commission, which must necessarily result in conflict and confusion. It is clear to us that it was to avoid such divided responsibility and to leave it on the city, where it is placed by section 5945, that the legislature, in all of the legislation since the Federal Aid Act of 1916, has never, expressly or impliedly, repealed section 5945, and has never taken the control of its streets from a city, even though it has given permissive authority to the commission to aid in the construction or maintenance of primary-road extensions through the city.

The appellant, at the time in question, was traveling on a street of appellee, and not on a road which was a part of

the primary-road system. Appellee reviews, at length, the history of primary-road legislation respecting extensions of primary roads through cities and towns, but we find nothing therein indicating that the legislature ever relieved or ever intended to relieve cities and towns from the control of their streets, with respect to liability to persons injured thereon, through negligence in their construction or maintenance.

We base our reversal upon the construction of the Iowa statutes, but refer briefly to some decisions in other jurisdictions.

It is difficult to find authorities from other jurisdictions which directly support the contentions urged by the appellant, because of the differences in statutory provisions. But the appellant has called to our attention a number of authorities which support the general rule urged by her, that where a statutory duty has been placed upon a city or town to supervise, care for, and control its streets and to use due care to make them reasonably safe for those who use them, it is not relieved of that obligation simply because a state highway commission or similar authority is authorized to take over and maintain one of its streets as a part of a state system of highways. In order to be so relieved, the authorities generally hold that the legislature must, expressly or by clear implication, discharge the city or town of such obligation. In Pickett v. Carolina & N. W. Ry., 200 N. C. 750, 752, 158 S. E. 398, 399, plaintiff sued to recover for personal injuries received in an automobile accident. There was a nonsuit against the railway company and judgment for plaintiff against the town. Some time before, the highway commission, under statutory authority, had taken over a street leading to a viaduct over the railroad tracks, for the purpose of paving it and constructing it as a part of the state highway system. The statutes of North Carolina were like those of Iowa, in that streets in towns and cities did not form a part of the state highway system. The town, in answering plaintiff's complaint, alleged that the commission was in control of the street and bridge, and that the town was therefore charged with no responsibility for maintenance and repair. The court asked this question:

"When the State Highway Commission takes over a public street in an incorporated town for the purpose of constructing

and maintaining same as a link in the State highway system, is such town thereby relieved from all liability for negligence to persons using said street?"

The court answered the question in the negative and affirmed the judgment against the town.

Support for appellant's position is given by decisions in Atkinson v. Town of Decatur, 131 Miss. 707, 95 So. 689; Town of Senatobia v. Dean, 157 Miss. 207, 127 So. 773, 774. Under the statutes involved, the municipalities had no authority to surrender entire jurisdiction over their streets to any other authority. It was held that, while they had surrendered control over the streets to road commissioners and the board of supervisors in the first case, and to the state highway department in the second case, the municipalities were responsible for the injuries.

It may be noted, however, that when the legislature determined to relieve cities and towns in such instances of liability it did so by enacting legislation expressly so providing. See City of Lumberton v. Schrader, 176 Miss. 272, 168 So. 77. Similar procedure was carried out in Michigan. See Longstreet v. County of Mecosta, 228 Mich. 542, 200 N. W. 248, and Cory v. County of Livingston, 268 Mich. 414, 256 N. W. 468. Other decisions, tending directly or by analogy to support the appellant, are Delahoussaye v. Board of Trustees, 157 La. 782, 103 So. 152; Bosqui v. City of San Bernardino, 2 Cal. 2d 747, 43 P. 2d 547; County Commissioners v. Leaf, 177 Md. 82, 8 A. 2d 756; Richardson v. County Commissioners, 120 Md. 153, 87 A. 747; Stoehr v. Town of Red Springs, 195 Wis. 399, 219 N. W. 98; Town of Waynesville v. Satterthwait, 136 N. C. 226, 48 S. E. 661; Michaux v. City of Rocky Mount, 193 N. C. 550, 137 S. E. 663; Maynard v. Town of Westfield, 87 Vt. 532, 90 A. 504; City of Pineville v. Lawson, 225 Ky. 542, 9 S. W. 2d 517; Shaver v. Rice, 209 Ky. 467, 273 S. W. 48; and 5 Blashfield Cyclopedia of Automobile Law and Practice, Permanent Edition, section 3196.

Appellant's first assignment of error must be sustained.

II. Appellant's second assignment of error is based upon the contention that Exhibit A is without authority of law. In view of our reversal because of the errors complained of in the

378

first assignment, we do not find it necessary to determine the matters involved in the second assignment.

The decision appealed from is reversed.—Reversed.

WENNERSTRUM, C. J., and SAGER, STIGER, HALE, and GARFIELD, JJ., concur.

MILLER, J., dissents.