## Wickliffe, et al. v. City of Greenville, et al.

(Decided June 1, 1916.)

### Appeal from Muhlenberg Circuit Court.

1. Municipal Corporations—Assessment for Street Improvements— Sections 157 and 158 Constitution.—The taxes referred to in sec-

tions 157 and 158 of the Constitution are the regular levies of taxes for ordinary governmental purposes upon all the property in the taxing district, according to its value; those sections do not embrace special assessments in cities for street improvements which are not taxes within the meaning of the constitutional provisions.

2. Municipal Corporations—Streets—Special Assessments—Sections 157 and 158 Constitution.—Special assessments for the construction of streets in a city are not to be considered in determining the municipal tax rate under section 157 of the Constitution, or the limit of municipal indebtedness under section 158 of that instrument.

3. Municipal Corporations—Street Construction—Section 3643 Ky. Statutes, Sub-section 1.—Under sub-section 1 of section 3643 of the Kentucky Statutes, a city of the fifth class may construct streets only in one of three ways: (1) at the cost of the city; or (2) at the cost of the land fronting and abutting upon the improved street; or (3) the city may require the abutting property to pay two-thirds of the cost, the other third to be paid by the city; the last two methods being subject to the provision that the assessment shall, in no case, exceed fifty per cent of the value of the ground, after the improvement is made.

4. Municipal Corporations—Street Construction—Ordinances—Section 3643 Kentucky Statutes, Sub-section 1.—An ordinance of a city of the fifth class which directed the middle twenty feet of a street to be constructed at the cost of the city and the remaining eight feet upon either side of the middle section of the street to be constructed at the cost of the abutting property, violated sub-section 1 of section 3643 of the Kentucky Statutes and is, for that reason, invalid.

5. Municipal Corporations—Street Construction.—Sub-section 1 of section 3643 of the Kentucky Statutes contemplates a division of the cost of constructing the streets of a city of the fifth class to be based upon the total cost of the street and not upon a territorial partition of the street.

6. Municipal Corporations—Street Construction.—Uniformity and equality of burdens require that the same system of aportioning the cost of constructing streets should govern all cases.

HUBERT MEREDITH for appellants.

E. A. TAYLOR for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER.— Reversing.

At an election held in the city of Greenville, a city of the fifth class, on November 2nd, 1915, more than two-thirds of the voters thereof authorized the city council to issue bonds to the amount of $22,400.00 for the purpose

of rebuilding and reconstructing the public streets of the city. Bonds to that amount were duly issued and sold for more than their par value, and the proceeds thereof were paid into the treasury of the city.

On April 3rd, 1916, the city council adopted an ordinance entitled ''An ordinance to assist in the improvement and reconstruction of a part of Main street in the city of Greenville,'' and reading, in part, as follows:

''The city council of the city of Greenville do ordain as follows:

''Whereas, the city of Greenville is about to and will construct and reconstruct the streets in the city of Greenville, Muhlenberg county, Kentucky; and

''Whereas, it becomes necessary for the adjoining property owners in certain sections of said streets to assist in the construction thereof, it is therefore ordained by the city council of the city of Greenville that Main street, beginning at the south side of Hopkinsville street where it intersects with Main street and extending in a northernly direction down Main street to the intersection of Main-Cross street; thence from Main-Cross street in a northernly direction to an alley at Shaver's Mill on the east and an alley at J. R. Mayhew's blacksmith shop on the west side of Main street, shall be constructed by the city of Greenville 20 feet wide and that there will remain on each side of said street a distance of 8 feet after the construction and reconstruction of a street 20 feet wide by the said city of Greenville, it is now further ordained by the city council that the remaining 8 feet on each side of said street shall be reconstructed at the exclusive cost of the owners of the lots or parts of lots, or lands fronting or abutting or bordering along the street so as above described. That the improvement thereon shall be equally apportioned by the city council according to the number of front feet owned by them respectively, and the cost of said 8 feet as hereinabove set out shall be and constitute a lien on said abutting property as provided by law.''

The remaining portions of the ordinance relate to the construction of the street and apportionment of the cost thereof. At the same time the city council passed another ordinance for the construction of gutters and curbs on another portion of Main street extending northwardly from Shaver's Mill to John McClellan's property, at the

cost of the property owners   on that   portion   of Main
street.

The appellants being the owners of a lot fronting upon
that portion of Main street to be constructed, brought
this·action to enjoin the city of Greenville, its council,
mayor and street committee from enforcing the ordi-
nances above mentioned. They claimed they were en-
titled to the relief prayed for on four grounds: (1) That
in as much as the bonds had been sold to procure funds
for the reconstruction of all the streets of the city, and
only a small part of the property owners therein were
required to build a portion of the street and gutter in
front of their property, they were not receiving their
equal and proportionate benefits to be derived by the
expenditure of the proceeds of the bonds; (2) that the
taxation made necessary to meet the payments of the
bonds and interest charges, together with the additional
assessment for the discharge of the lien created against
their property for the construction of the portion of
the street, created a double lien and charge upon their
property; (3) that the city had already levied, and will
be compelled to levy for each of the next ten years, the
maximum tax of 75 cents on each one hundred dollars of
taxable property in the city, and that the creation of an
additional lien and charge thereon of an assessment to
pay for their portion of the construction of said street
and the guttering in front of their property, would create
a charge thereon in excess of the maximum tax allowed
under section 157 of the constitution; and, (4) that the
indebtedness created by the bond issue referred to
amounted to three 'per cent of the assessed value of all
the property in said city, and that the creation of the ad-
ditional burden thei con for the construction of the streets
and guttering is prohibited by section 158 of the constitu-
tion.

The circuit court sustained a demurrer to the petition
and the plaintiffs appeal.

As to plaintiffs' first contention that they will not re-
ceive their equitable share of the benefits to be derived
by the expenditure of the proceeds of the bonds, little
need be said. This objection is based upon the idea, that
while Main street was to be constructed in part, at the
cost of the abutting property, other streets would be con-
structed by the city, and wholly paid for out of the pro-
ceeds of the bond sale; and, in this way a proper propor-

tion of the proceeds of the bond sale would not be expended in constructing Main street.

It has often been said by this court, as well as other courts, that a strictly equitable distribution of the benefits arising from taxation is hardly attainable. Within reason, the decision of questions of this character must necessarily be left with some determining body, which in this case, is the city council. It represents all the taxpayers of the city, and so long as it acts within the law, its discretion will not be interfered with. The only question for consideration is one of power upon the part of the city to do what it has directed.

This question was discussed by this court in the late case of Vogt v. City of Oakdale, 166 Ky. 810. In that case, Oakdale, a city of the fifth class, passed an ordinance requiring the construction of a thirty-foot driveway on Kenton street, the cost to be apportioned according to the front feet, and Vogt sued to enjoin the city from enforcing the ordinance, upon the ground that his property by reason of its extended front and shallow depth, paid more, per square foot, than the adjoining property was required to pay, and that he was, therefore, discriminated against. The court, however, overruled the objection and sustained the assessment, according to the front feet, which was authorized by the statute.

It was further decided, in the Vogt case, *supra,* that an assessment for a public improvement is not a tax in the ordinary sense of that term, but is a charge for an improvement, for which the property benefited should pay compensation, 28 Cyc 1102; Williams v. Wedding, 165 Ky. 373.

The distinction between a tax and a local assessment has been uniformly recognized by the courts of this State; and, while the latter is in one sense a tax, since it is the imposition of a burden upon the citizen and an involuntary charge upon his property, it is not a tax in the sense contemplated by the framers of the constitution. Vogt v. City of Oakdale, *supra.*

In Zable v. Louisville Baptist Orphans' Home, 92 Ky. 89, the court said:

"While the right to levy a local assessment as, for instance, to pay for a street improvement in a town or city, is derived from the taxing power, yet it is a distinct character of taxation not ordinarily included within the meaning of that term. It proceeds upon the ground of

equivalent benefits, and that it is no burden to pay for the improvement of a street in the ratio of benefits received.''

In Williams v. Wedding, *supra,* the court said:

"The taxes referred to in sections 157 and 158, *supra,* are the regular levies of taxes for ordinary governmental purposes upon all the property in the county, town or taxing district according to its value, and those sections do not embrace the taxes levied as special assessments in towns and cities for street improvements and in drainage districts for the construction of ditches and drains. Such assessments are not taxes within the meaning of the constitutional provisions, *supra.* Delker v. City of Owensboro, 61 S. W. 362; Lexington v. McQuillan's Heirs, 9 Dana 512; Gosnell v. Louisville, 104 Ky. 201; Holzhauer v. City of Newport, 94 Ky. 407; Maddox v. City of Newport, 14 S. W. 957; Levi v. City of Louisville, 97 Ky. 409; McNaughton v. Louisville Industrial School, 19 Ky. L. R. 1695, 44 S. W. 38; Zable v. Orphans' Home, 92 Ky. 89. That local assessments made upon property for a local improvement, imposed by reason of local benefits, are not within the provisions of sections 157 and 158 of the constitution may now be considered as settled law in this State.''

It must, therefore, be treated as settled that special assessments are not to be considered in determining the municipal tax rate under section 157, or the limit of municipal indebtedness under section 158 of the constitution.

It will be observed, however, that the objections heretofore considered treat the ordinances as valid and passed pursuant to statutory authority, and invalid only in their supposed operation and effect under the constitution.

The authority, however, of a city of the fifth class to construct and reconstruct its streets and gutters is found in subsections 1 and 2 of section 3643 of the Kentucky Statutes, which read as follows:

"1. The city council is hereby authorized and empowered to order any work they may deem necessary to be done upon the sidewalks, curbing, sewers, streets, avenues, highways, and public places of such city. The expenses incurred in making and repairing sidewalks and curbing shall be paid by the owners of the lands fronting and abutting thereon, each lot or portion of lot being separately assessed for the full value thereof, in proportion to the frontage thereof to the entire length of the

whole improvement, not exceeding a square, sufficient to cover the total expense of the work; but the owners of such property shall have the right to make such improvements, if they prefer doing so instead of paying for same. The cost and expenses incurred in constructing or reconstructing streets, avenues, highways, sewers and public places shall be paid out of a general fund of the city or by the owners of the land fronting and abutting thereon, as the city council may in each case determine; or the city council may order and direct that two-thirds only of said cost and expenses so incurred shall be paid by the owners of the lands fronting and abutting said improvements and the other one-third paid by the city, but the local assessments shall not exceed fifty per centum of the value of the ground after such improvement is made, excluding the value of the buildings and other improvements upon the property so improved.

"The cost of constructing and reconstructing the intersection or crossing of streets, avenues and highways shall be at the expense of the city.

"Each subdivision or territory bounded on all sides by principal streets shall be deemed a square. When the territory contiguous to any public way is not defined into squares on either or both sides by principal streets the ordinance providing for the improvement for such public ways shall be the depth of the side or sides not defined in the square fronting said improvement, to be assessed for the cost of making the same, according to the number of square feet owned by the parties, respectively, within the depth set out by ordinance.

"2. Whenever the city council shall determine upon the construction or reconstruction of streets, avenues, highways, sewers and public places at the expense or partial expense of the abutting property, as provided in section one of this act, they shall cause the same to be done as follows:

"The ordering of such improvement shall be by ordinance of the city council, and the contract therefor shall be awarded to the lowest and best bidder after proper advertisement for bids. The city council shall require the accepted bidder to execute a bond to the city with good and sufficient security to be approved by said council for the faithful performance of his contract."

The authority here granted to construct streets may be exercised only in one of three ways: (1) at the cost

of the city; or (2) at the cost of the owners of the land fronting and abutting upon the improved street; or (3) the city may require the abutting property to pay two-thirds of the cost, the other third to be paid by the city; the last two methods being subject to the provision that the assessment shall, in no case, exceed fifty per centum of the value of the ground, after the improvement is made.

But, in the case at bar, the city of Greenville followed neither of these methods. On the contrary, it proposed to pay the cost of making twenty feet of a certain part of the street, leaving the abutting property to bear the cost of making the remaining sixteen feet of the street regardless of the proportionate cost of the portions.

The statute contemplates a division of obligation based upon the total cost of the street, and not upon a territorial partition of the street as was attempted in this case.

Furthermore, while a city may adopt either of the three plans provided by the statute, it must follow the same plan in all cases. It never was intended that the city should, or could, pay the entire cost of constructing a street in front of A.'s property, and require B to pay the entire cost of making a street in front of his property. Uniformity and equality of burdens require that the same system of apportionment, whichever it may be, should govern all cases.

In Cooley's Constitutional Limitations (7th Ed., p. 718), it is said:

"But whatever may be the basis of the taxation, the requirement that it shall be uniform is universal. It applies as much to these local assessments as to any other species of taxes. The difference is only in the character of the uniformity, and in the basis on which it is established."

This State has carried this principle requiring uniformity of taxation to the extent of holding that it is not competent for the legislature to extend the limits of a city, in order to include therein farming lands, occupied by the owners for agricultural purposes, and not required for either streets or houses, or other purposes of a town, and where the purpose was merely to increase the city revenues, by taxation. City of Covington v. Southgate, 15 B. M. 491; Arbegust v. Louisville, 2 Bush 271; Swift v. Newport, 7 Bush 37.

Since the ordinances in question were, therefore, not authorized by the statute, the demurrer to the petition should have been sustained.

Judgment reversed for further appropriate proceedings.