### Tapp v. Johnson, Mayor.

(Decided March 9, 1917.)

### Appeal from Henderson Circuit Court.

1. Municipal Corporations—Street Improvement by Street Railway. —Under chapter 10 of the acts of 1916 (Ky. Stats., sec. 3450), the general council of a city of the third class may, independently of any contract or requirement of the company's franchise, require a street railway company to bear its reasonable and proportionate part of a street improvement, and assess the cost on all of its property, assets and franchise.

2. Municipal Corporations—Street Improvement—Abutting Owners. —The fact that the cost of a street improvement is made a lien

only on the abutting property, while as to a street railway it is made a lien upon all of its property, assets and franchise, does not render such provision of the ordinance or act void, on the ground of unreasonable discrimination. The relation of a street railway to the streets of a city is so different from that of the abutting property, there is no reason why street railways may not be classified, so far as street improvements are concerned, upon a different basis from that of the abutting property.

3. Municipal Corporations—Street Improvement—Abutting Owners. —The provision of section 2 of chapter 10 of the acts of 1916 (Ky. Stats., sec. 3450), providing that the city may pay the cost of the improvement of intersections with other public streets, or it may assess the cost thereof against the abutting property, is not unconstitutional upon the ground that it is discriminatory, or does not provide for a uniform method for the construction of streets, since it provides that one city may adopt the plan of requiring the abutting property to bear the expense of improvement of the streets, while another city of the same class may itself pay said cost; but, whichever plan is adopted by the city must be applied in all cases.

4. Municipal Corporations—Street Improvement—Due Process of Law.—That portion of section 8 of chapter 10 of the acts of 1916 (Ky. Stats., sec. 3450), which authorizes the improvement of streets in cities of the fourth class on the ten year payment plan, does not constitute a taking of property without due process of law, or violate either the constitution of Kentucky or the 14th amendment to the constitution of the United States.

5. Municipal Corporations.—The rules of law announced in City of Newport v. Silva, 143 Ky. 704, are approved and reaffirmed.

WOODWARD & DIXON for appellant.

B. S. MORRIS and VANCE & HEILBROMER for appellees.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

This action by Ernest Tapp, a resident and taxpayer of Henderson, a city of the third class, against the Mayor and the members of the common council of that city, raises the question of the constitutionality of chapter 10 of the Acts of 1916, which re-enacts sections 3449 to 3459, both inclusive, of the Kentucky Statutes, relating to the control and improvement of streets and other public highways in cities of the third class.

By an ordinance of May 8, 1916, the common council of the city of Henderson provided for the improvement of Letcher street, by the construction of concrete curbs and gutters on both sides thereof, between Cumnock and Bailey streets.

While the Mayor and board of councilmen were preparing to carry out the ordinance by constructing the curbs and gutters, the appellant brought this action, on May 26, 1916, in the Henderson circuit court, seeking to enjoin the Mayor and council from further proceeding with the work. By their answer, the defendants admitted they were preparing to carry out the ordinance, and, unless prevented from doing so, they would cause the curbs and gutters to be built in accordance with the provisions of the ordinance and the Act of 1916.

Upon a hearing, the court dismissed the petition, and Tapp appealed.

The petition sets out specifically eight provisions of the Act of 1916, and alleges that each of said provisions is illegal, unconstitutional, and void, because it is discriminatory and does not provide for a uniform method for the construction and the payment of the cost of the improvement contemplated.

Without setting out these provisions in detail, and contenting ourselves by describing them in general terms, it is sufficient to say that they are: (1) that provision of section 2 of the Act of 1916 (Ky. Sts., sec. 3450), which requires a street car company occupying the street which it is proposed to improve, to pay its proportion of the cost; (2) that provision of the same section providing that the city may pay the cost of the improvement of intersections with other public ways, including one-half of the width of the street or alley being improved, opposite other streets or alleys so being improved or it may assess the cost thereof against the abutting property; (3) that portion of the same section which provides that the common council of cities of the third class may provide by general ordinance, that the city shall pay part, and if so, what part of the cost of the improvement of the streets, alleys, and other public ways of the city; (4) that part of section 3 of the act (Ky. Sts., sec. 3453), which empowers the owners of more than fifty per cent. of the abutting property to designate the materials to be used in making the improvement; (5) that clause of section 4 (Ky. Sts., sec. 3454), which authorizes the common council to prescribe one kind of material to be used in the improvement of that part of any street for the cost of which any railway company may be liable, and a different material for the improvement of other portions of the same street; (6) that portion of section 8 of the act (Ky. Sts., sec.

3458), which authorizes the common council to cause the improvement of streets, alleys and other highways on the ten-year payment plan; (7) that portion of the same section which gives to the property owner the privilege of paying upon the installment plan; and, (8) that clause of the same section which gives to any railway company liable for any improvement tax, the like privilege of paying such tax on the installment plan, extending over a period of years, not exceeding ten years.

With one exception, the clauses thus objected to in the Act of 1916, are copies of and are taken from the charter of cities of the second class. See Acts 1910, chapter 107, now found in Kentucky Statutes, sections 3094 to 3102, inclusive.

In City of Newport v. Silva, 143 Ky. 704, this court in a carefully considered opinion, reviewed all of the questions here raised, which were then made to the identical provisions of the Act of 1910, and upheld them as constitutional.

In concluding that opinion, we said:

"After careful consideration of the act in question, we fail to find wherein it is unconstitutional, either in whole or in part; and, as the ordinance was enacted pursuant to the authority therein contained, we also conclude that it is valid."

The constitutionality of the Act of 1910, was reaffirmed in Creekmore v. Justice & Co., 152 Ky. 514, 44 L. R. A. (N. S.) 552.

In view of this explicit ruling by this court, we deem it unnecessary to repeat what was said in the Silva case, in answer to the objections now made; it will be sufficient to consider the one instance in which it is claimed there is a material departure from the Act of 1910. This departure is found in the second clause above specified, providing that the city "may" pay the cost of the improvement of intersections with other public streets, or it "may" assess the cost thereof against the property abutting on the street ordered to be improved. In the corresponding section of the Act of 1910 (Ky. Sts., 3096), it is provided that cities of the second class "shall" pay the cost of the improvement of intersections, and they are not given the right to assess the cost thereof against the abutting property. The objection to this section in the Act of 1916, is, that it is illegal, unconstitutional, and void, because it is discriminatory, and does not pro-

vide for a uniform method for the construction and payment for the improvement therein provided for.

It is argued that because the city is given the choice of paying the cost of improving a street intersection, or charging it against the abutting property owner, it may choose in one instance to pay for the intersection out of the common funds of the city treasury, and in another instance it may order the abutting property owners to pay for it. Of course, if the city should make such a distinction, it would work a discrimination against those property holders who would be required to pay the tax when compared with other property owners who should not be required to pay it. But we do not understand that any such power is given under this statute. The city may adopt one plan or the other; but, after it has adopted one plan, it must adhere to it until it is changed by the legislature. It cannot say today that Smith shall pay the cost of his intersection in one part of town, and that tomorrow the city will pay the cost of Jones' intersection in another part of the town. The statute, of course, applies to all cities of the third class; and, as we read it, it merely provides that one city of the third class may adopt the plan of paying the cost of improving intersections, while another city of the same class may assess the costs against the abutting property owner. But whichever plan is adopted by a city must be adhered to, in order that uniformity of burdens in this respect may be imposed.

As it nowhere appears in this record what provision, if any, the city of Henderson has made with respect to paying the cost of intersections, or that plaintiff will be required to pay such cost while other citizens of Henderson have been exempted therefrom, the plaintiff has shown no just cause of complaint against this charter provision.

Judgment affirmed.