## Shaver, et al. v. Rice, Mayor, et al.

(Decided June 9, 1925.)

### Appeal from Muhlenberg Circuit Court.

1. **Municipal Corporations—Cities May Construct and Reconstruct Streets Constituting Part of State Highway Until State Undertakes Work.**—Kentucky Statutes, sections 4356t-5, 4356t-8, providing that cost of constructing state highways is to be borne by state and federal government, did not repeal existing statutes, authorizing cities and towns to construct and maintain their streets, and until funds become available, and state road department undertakes construction, cities and towns may construct and reconstruct their streets under any plans provided by their charters.

2. **Municipal Corporations—Special Assessments Not "Taxes" Within Constitutional Provisions as to Municipal Tax Rate and Limit of Indebtedness.**—Special assessments for street improvements are not taxes within meaning of and are not to be considered in determining municipal tax rates or indebtedness, under Constitution section 157, or limit of municipal indebtedness under section 158.

3. **Municipal Corporations—Submission of Question of Bond Issue for Street Improvement Held Not Required where Improvement at Exclusive Cost of Abutting Owners.**—Kentucky Statutes, sections 3643-1 to 3643-12, do not require that when street improvements are ordered at exclusive cost of abutting property owners

under 10-year bond plan, question of bond issue must be submitted to voters of city, even if cost of work exceeds amount of legal annual levy or constitutional limit of indebtedness.

4. Municipal Corporations—City Constructing Entire System of Streets Under One Plan May Thereafter Reconstruct them Under Another Authorized Plan.—Where city of fifth class, pursuant to Kentucky Statutes, sections 3643-1 to 3643-12, constructed entire system of its streets and highways at exclusive cost of city, held that, after lapse of 10 years, streets having worn out, city may reconstruct streets at cost of abutting owners.

5. Municipal Corporations—Construction of Part of Street Under Unauthorized Plan Cannot Affect Validity of Improvement Ordinance Proceeding Under Statutory Plan.—That city of fifth class constructed a portion of one street under a plan not authorized by Kentucky Statutes, sections 3643-1 to 3643-12, cannot affect validity of ordinance proceeding under one of statutory plans, providing for street improvements at expense of abutting property owners.

6. Municipal Corporations—Abutting Property Owners Cannot Complain Because Improvement Ordinance Provides for Constructing Street Intersections at City's Expense.—Abutting property owners, attacking validity of a street improvement ordinance, cannot complain that, by the ordinance, city has agreed to pay for street intersections, since if city council may not legally so provide, then cost of street intersections necessarily would be charged to abutting property owners.

BELCHER & BELCHER for appellants.

T. E. SPARKS and WILKINS & SPARKS for appellees.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE— Affirming.

The appellants (and there are 49 of them) were plaintiffs below. A general demurrer was sustained to their petition as amended and they declined to plead further. They prosecute this appeal from the judgment thereupon dismissing the petition.

It appears that in 1924 the city council of the city of Greenville, Kentucky, enacted an ordinance providing for the construction of certain of its streets at the expense of the abutting property owners under the ten-year bond plan of subsection 1-12 of section 3643, Carroll's Kentucky Statutes, 1922. Pursuant to the ordinance a contract was let and the streets have been constructed.

This action was instituted by appellants, all of whom own lots abutting upon the streets so improved, to enjoin

appellees, the mayor and council, and the city, from issuing and selling the bonds and from making any apportionment or assessment against them or any of them. They attacked the validity of the ordinance and challenged the right of the city and its mayor and council to require them to pay their proportionate part of the cost of the street improvement for the several reasons hereinafter discussed.

The petition sets forth that the streets to be improved under the ordinance in question constitute that part of project No. 10 of the primary system of state highways, provided for by section 4356t-5, Carroll's Kentucky Statutes, 1922, that passes through and lies within the corporate limits of the city of Greenville, Kentucky. The petition pleaded the provisions of the closing literary paragraph of the section, *supra,* and the provisions of section 4356t-8, of the statutes, and under them challenged the right of the city of Greenville, through its board of council and mayor, to compel the owners of property abutting upon such of its streets as are a part of project No. 10 of the primary system of state highways, to pay the cost of constructing those streets. It is contended for appellants that the enaction of the two sections of the statutes above in effect and by implication repealed all statutory authority of cities and towns to construct at the expense of abutting property owners any of their streets that became a part of the primary system of state highways; and that now streets within cities and towns which are a part of that system may be constructed only as provided for in the two sections of the statute above.

Section 4356t-5, after providing for and declaring the various 63 projects that constitute the system of state highways, further declares:

"All state and federal moneys used in the construction and maintenance of roads in the state, except as otherwise provided in this act, shall be used in the construction and maintenance of the roads herein designated until the entire system is fully completed. The cost of construction of this entire system of state highways shall be borne entirely by the state, or by the state and federal government, where the roads are built in cooperation, and they shall be maintained entirely by the state, but nothing herein shall prevent any county,

municipality, association, firm or individual from making a donation to the state in aid of the construction or maintenance of any of the said roads of the state, and the state shall have the right to accept any donation on the terms and conditions prescribed by the state highway commission. The construction and maintenance of this system of primary roads shall be under the direction, supervision and control of said commission and they shall do all things necessary in the construction of said roads as herein required.''

Section 4356t-8, reads:

''When any primary road herein designated must pass through a city or town, the state highway commission is hereby empowered to enter into a contract with such city or town for the construction of such road if the road through the city or town is to be different from the road constructed outside of the city or town, but if the road is the same, the cost thereof shall be paid as is the cost of other roads designated herein. In the event it is necessary to construct a road or street at a greater cost than is paid for construction of a like lineal mileage outside of the city or town, such city or town must pay the additional cost of construction, and the details shall be agreed upon between such city or town and said state highway commission.''

Appellants insist that, since by those sections of the statutes it is provided that the cost of constructing the entire system of state highways shall be borne by the state or by the state and federal government, and since a plan is provided whereby, within the limits of a city or town, if the city desires a higher type, more expensive or wider highway than that contemplated by the primary system, the state highway commission may contract with the city or town so that each may bear its proportionate part of the cost of the construction, no other plan or system of building streets in cities or towns that by the statute above were made part of the primary system of state highways may be followed than that so provided for; and that cities and towns are now powerless to construct and reconstruct such streets at the expense of abutting property owners.

The court is unable to sustain appellants' contention on this question. Certainly, the statutes quoted

above have conferred upon the state highway department the power and authority, in constructing the primary system of state highways, to construct that portion of it lying within cities and towns. The primary system of state highways, originally created and as added to by succeeding legislatures, is an exceedingly large undertaking, and many years will elapse before, from the revenue that may be devoted to it, under the constitutional and statutory limitations, fettering the road department, it can be completed. If appellants' contention should be upheld a city would be powerless to improve any of its streets which constitute a portion of the primary system of highways, not only at the expense of abutting property owners, but it would be equally powerless to repair, construct or reconstruct those streets at its own expense or at the joint expense of the city and the abutting property owners. The legislature in adopting the primary system of state highways undertook to and doubtless did select the most important highways in the state. As those highways pass through the various cities and towns of the state, necessarily they cover their most important streets. To uphold appellants' contention would be to hold that until within the limitation imposed a sufficient amount of revenue has become available for the state highway department to take over and construct the entire system of state highways, including such of the streets of all the cities and towns of the Commonwealth as constitute a part of it, no city or town may legally expend any of its money derived from any source upon any of those streets. The deplorable condition that would follow that holding may readily be realized. The enaction of the two sections of the state road law quoted above did not have the effect of repealing the statutes then existing authorizing cities and towns to construct and maintain their streets according to any of the plans then provided for by law. Those two sections of the statute mean, and can only mean, that whenever funds become available and the road department takes over and undertakes to construct any of the primary system of highways within the corporate limits of cities and towns of the Commonwealth, the plan provided for in those sections of the statute must be followed. Until such time cities and towns have authority, under the provisions of their respective charters, to construct, reconstruct and keep in repair their streets under any of the plans provided for them.

The petition next challenges the validity of the ordinance providing for the construction of the streets in question, upon the ground that the amount of money to be raised for the "street improvement fund" by the sale of bonds exceeds the amount which could be met by the levy authorized by law, and therefore that it was necessary before enacting the ordinance and undertaking the work, under subsection 12 of section 3643 of the statutes, to submit the question of incurring the debt to the voters of the city. The petition charged that the proposed bond issue exceeded the amount that the city could legally levy in one year and that the question was not submitted to the voters of the city; and pleaded, therefore, that the ordinance in question was void, and that the street assessments the city and its mayor and council were attempting to make thereunder were illegal.

We find the following to be the history of our legislation with relation to street improvement for fifth class cities: After the adoption of the present Constitution the original act providing uniform charters for cities of the fifth class was enacted by the legislature in 1893, the bill being approved July 3rd of that year. The section of that act authorizing and empowering city councils of cities of the fifth class to construct and reconstruct sidewalks, curbing, sewers, streets, avenues, highways and public places of such cities became section 3543, Kentucky Statutes, Barbour and Carroll, 1894, and it has retained that number down to the present Carroll's Kentucky Statutes of 1922. The original act provided that the cost of construction and reconstruction of streets, avenues, highways, sewers and public places should be paid by the city from the general fund, and that sidewalks and curbing should be constructed and reconstructed at the expense of the abutting property owners. That act remained in force without amendment until 1912. At the 1912 session of the legislature section 3643 was repealed and re-enacted in 12 subsections, and the re-enacted statute, carried as section 3643-1-12, has remained unchanged to the present time with one small exception. Subsection 1 of section 3643, as re-enacted in 1912, contained this sentence:

"The cost of constructing or reconstructing the intersection or crossing of streets, avenues and highways shall be at the expense of the city."

By an act of the General Assembly of 1920, amending the above subsection of the statutes, the sentence

above quoted was stricken, leaving the remainder of that section of the statutes and all its subsections intact.

From the foregoing it will be observed that prior to 1912 all construction and reconstruction of streets, avenues, highways, sewers and public places in cities of the fifth class were required to be paid by the city itself from its general fund. Prior to that time the construction and repairs of sidewalks and curbing alone might be made at the expense of property owners. The act of 1912 for the first time gave authority to city councils of cities of the fifth class to construct or reconstruct streets, avenues, highways, sewers and public places at the expense of the owners of the land fronting and abutting thereon. As amended and re-enacted by the act of 1912, the original method provided for by the act of 1893 of constructing streets, etc., at the expense of the city was incorporated into the new act in exactly the language of the act of 1893. Two additional plans of payment were added, by one of which the entire cost might be apportioned to owners of abutting property, and by the other of which two-thirds of the cost might be so apportioned, and one-third be paid by the city from its general fund. By the act of 1912 "the ten-year bond plan" of paying the cost of street improvement, either construction or reconstruction, was first created and as reference to subsections 2 and 3 of section 3643, considered with the fact that it was created simultaneously with and as a part of the two methods or plans of financing the construction and reconstruction of streets, etc., will make plain that plan was provided to apply only to instances in which such street improvement was undertaken by the city, either exclusively at the cost of abutting property owners, or two-thirds at their expense, and one-third at the expense of the city. Subsection 12 of section 3643, requiring submission of the question to a vote, provides:

"If it shall be necessary to raise an amount of money for said 'street improvement fund;' which would create an indebtedness greater than the amount which could be met by the levy authorized by law, the city council shall cause the question of such issue and sale of bonds to be submitted to the qualified voters of said city at an election to be held for said purpose, as provided for in section 3637-3, of the Kentucky Statutes."

Unquestionably by the subsection of the statute just quoted the legislature intended that if the bonds to be sold to raise the money for "the street improvement fund" were the obligation of the city, and if the total amount of such obligation created an indebtedness greater than the amount which could be met by the levy authorized by law, the city council was without power or authority to issue and sell such bonds without first obtaining the sanction of the voters of the city. Manifestly that section of the statutes was enacted by the legislature bearing in mind the inhibitions contained in sections 157 and 158 of our Constitution. It became necessary to insert that provision into this statute to take care of such cases as might arise when a city of the fifth class undertook to construct or reconstruct its streets upon the ten-year bond plan, providing that two-thirds of the cost of the work should be borne by the abutting property owners and one-third by the city. If in that state of case the city's portion of the cost of the improvement made it necessary for the city to raise an amount of money for "the street improvement fund" which would create and indebtedness greater than could be met by the levy authorized by law, then under the provisions of section 157 of the Constitution the debt could be incurred only after a submission of the question to the qualified voters of the city and their approval of the debt by a two-thirds vote.

It has long been established and may be treated as settled in this jurisdiction that special assessments for street improvements and other similar public works are not taxes within the meaning of, and are not to be considered in determining municipal tax rates or indebtedness under section 157, or the limit of municipal indebtedness under section 158 of the Constitution. That question was elaborately considered and the supporting authorities cited in Wickliffe v. City of Greenville, 170 Ky. 528. Again the question was thoroughly considered and conclusively determined in Castle v. City of Louisa, 187 Ky. 397. An exhaustive collation of the authorities may be found in that opinion. In the latter case it was expressly held that under the various subsections of section 3643, Kentucky Statutes, cities of the fifth class, acting by their city council, in the construction and reconstruction of their streets upon the ten-year bond plan, wholly at the expense of the abutting property owners, may by the ordinance requiring the work to be done, provide that the faith and credit of the city shall

not be pledged to the payment of the bonds, and limit the city's liability to the assessments made on the property abutting the improvements; and that when the bonds issued and sold so provide the debt is not the debt of the city within the meaning of sections 157 and 158 of the Constitution. In that case it was said:

> "It is the established rule in this and other jurisdictions that contracts for local improvements, the cost of which is to be borne wholly by the property benefited, form no part of the indebtedness of the municipality within the meaning of sections 157 and 158 of the Constitution. The reason for the rule is that the contractor or holder of the bond must look alone to the fund created by the collection of the assessments on the abutting property, and the city is a mere agency for collecting the assessments and custodian of the fund when the assessments are collected. German National Bank v. Covington, 164 Ky. 292, 175 S. W. 330, Ann. Cas. 1907B. 189; Catlettsburg v. Self, 115 Ky. 669, 74 S. W. 1064, 25 Ky. L. Rep. 163; Adams v. Ashland, 26 Ky. L. Rep. 184, 80 S. W. 1105; Guilfoyle v. Maysville, 129 Ky. 532, 125 S. W. 666; Quill v. Indianapolis, 124 Ind. 292, 23 N. E. 788, 7 L. R. A. 681."

The doctrine that local assessments, as for instance, assessments to pay for street improvements, while in one sense taxes, are not taxes in the sense contemplated by the framers of our Constitution and are not to be considered in determining municipal tax rates and indebtedness under section 158 of our Constitution, had been announced by this court and accepted as the law of the state long prior to the enaction of subsection 12 of section 3643, Kentucky Statutes, in 1912. In view of the fact that under the various twelve subsections of that section of our statutes cities of the fifth class since 1912 have been authorized to require the construction and reconstruction of their streets to be done exclusively at the cost of abutting property owners, and in view of the fact that when subsection 12, *supra*, was enacted the established law of this state as declared by this court was that such local assessments were not taxes in the sense contemplated by the framers of our Constitution, and were not to be considered in determining municipal tax rates and indebtedness under section 157, or the limit of municipal indebtedness under section 158 of the Consti-

tution, it can not be understood that in enacting subsection 12 of section 3643, the legislature intended that when street improvement was ordered at the exclusive cost of the abutting property owners upon the ten-year bond plan it would be necessary to submit the question to the voters of the city even if the cost of the work exceeded the amount of the legal, annual levy or the constitutional limit of indebtedness. It is manifest that it was intended by that section of the statutes to submit the question to the voters of the city only in the event the city's part of the cost of the street improvement, where under the plan being pursued it proposed from its general fund to pay one-third of the cost, exceeded the amount that might be raised by a legal levy.

As pointed out in Castle v. City of Louisa, *supra,* the case of Schuster v. City Council of Oakdale, 180 Ky. 760, 203 S. W. 715, does not announce a contrary doctrine. In that case it was proposed to issue the bonds of the city without any restriction as to its liability. The unlimited faith and credit of the city were to be pledged to the payment of the bonds. That being true the indebtedness became the city's indebtedness and was its liability, though the city might reimburse itself out of the assessments on the abutting property. It was there properly held, under the state of case presented, that the bonds might be issued and sold only after an election as provided for in subsection 12 of section 3643 in conformity with section 157 of the Constitution, and in no event if the indebtedness exceeded the limit fixed by section 158 of the Constitution.

In the case now before us it appears that the ordinance attacked expressly provides that the faith and credit of the city of Greenville is not to be pledged for the payment of the bonds; that they are to be secured only by lien on the assessments to be made and apportioned against the abutting property owners. The city obligates itself to pay the bonds, not from its funds, but only from the assessments on the abutting property. The city may so relieve itself of obligation on the bonds because the statute expressly authorizes it to construct the streets exclusively at the expense of the abutting property owners. We therefore conclude that by subsection 12 of section 3643, the legislature intended that it was only in instances where raising money for the "street improvement fund" would "create an indebtedness," which would be the city's indebtedness, that it

would be necessary to obtain the sanction of the voters to do so. Therefore, the fact that the question was not submitted to and approved by the voters of Greenville in the case now before us plays no part and does not afford appellants ground for the relief they seek.

The petition next attacks the validity of the ordinance providing for the construction and reconstruction of the streets involved from the following position: It is pleaded that in the year 1915, pursuant to an election held for the purpose, the voters of the city of Greenville authorized the issue and sale of the city's bonds to the amount of $24,400.00, the limit of indebtedness that it could incur under the limitation of section 158 of the Constitution; that those bonds were issued January 1, 1916; will run for twenty years; bear interest at the rate of 5½ per cent per annum; and that $16,000.00 of the bonds are still outstanding. It was pleaded that the bond issue was voted to provide a street fund with which the city of Greenville at its own expense might construct the entire system of streets and highways within its corporate limits. It was pleaded that thereby the city adopted the one of the three plans provided by charters of cities of the fifth class for constructing streets; that is, that it adopted the plan of constructing its streets at its own expense. It was further pleaded that although the city had adopted that uniform plan of constructing its streets at its own expense, in February, 1923, it entered into a contract by which it constructed 259 lineal feet of one of its streets at a cost of $2,750.00, $750.00 of which was paid by the fiscal court of Muhlenberg county, $950.00 by the L. B. Knight Motor Company, and $1,050.00 by the city. It then was pleaded that after that departure from the plan adopted in 1915 the city council further undertook to depart from that plan by improving the streets in controversy at the expense of the abutting property owners. It is insisted that after having adopted the uniform plan of constructing and reconstructing the streets of the ctiy exclusively at its cost, as was done in 1915, the city council was without authority to depart from that plan and that the attempted departure from it by the ordinance under atack was illegal and void; and for that reason appellants are entitled to the injunction sought herein. In support of their contention appellants rely wholly upon the cases of Wickliffe v. City of Greenville, 170 Ky., 528, and City of Tompkinsville v. Miller, 195 Ky. 143. In

the latter case we find that the complaining property owners were relieved of the assessments for street improvement attempted to be imposed upon them by the city council of the city of Tompkinsville primarily for the reason that in having the street work done the city council did not let a contract to the lowest and best bidder after proper advertisement, as is required by section 3643-1, Kentucky Statutes, but did the work itself by employing overseers and workmen and teams, a method nowhere provided for in the statutes. It appears further, however, in that case that shortly prior to the work done the city council had constructed a portion of the same street at the expense of the city itself and from its general fund. On that question this court in that opinion said:

"It appears, at first blush, that it would be manifestly inequitable and unjust to appellee and other property holders upon the unimproved portion of the street, to require them as taxpayers to contribute to the payment for the construction of a half mile of the street and then to require them to construct the street in front of their property for the use of the public including those living upon the portion of the street which the city had improved, exclusively at their own costs."

In Wickliffe v. Greenville, *supra,* it appears that the ordinance attacked was held invalid primarily for the reason that it ordered the construction of the street under neither of the three plans provided for in section 3643, Kentucky Statutes. The street ordered constructed was 36 feet wide. The ordinance provided that the city should pay for a section 20 feet in width along the center of the street, and that the abutting property owners should pay for a section 8 feet wide on either side. That plan of constructing streets was held to be invalid as unauthorized by the statute. After so holding and in considering that case in its entirety, in view of the fact that a bond issue had been voted for the purpose of constructing and reconstructing all the streets of the city of Greenville, and that had been adopted as its then plan of constructing its streets, the court said:

"Furthermore, while a city may adopt either of the three plans provided by the statute, it must follow the same plan in all cases. It never was intended that the city should or could pay the entire

cost of constructing a street in front of A's property, and require B to pay the entire cost of making a street in front of his property. Uniformity and equality of burdens require that the same system of apportionment, whichever it may be, should govern all cases.

In Cooley's Constitutional Limitation (7th Ed., p. 718), it is said:

"But whatever may be the basis of the taxation, the requirement that it shall be uniform is universal. It applies as much to these local assessments as to any other species of taxes. The difference is only in the character of the uniformity, and in the basis on which it is established."

Relying upon the portions of the opinions in the two cases above mentioned, which we have quoted, appellants insist that since in 1915 the city council of Greenville adopted the plan of constructing and reconstructing its streets at the expense of the city, the plan then adopted is irrevocable and the city coucil has no authority to construct its streets under any other plan. To adopt appellant's view upon that question would be to hold that when a city of the fifth class has reached the limit of a bonded indebtedness, under section 158 of the Constitution, although in expending the proceeds of the bond issue the city may have constructed its entire system of streets, thus distributing with uniformity and equality the benefits derived from and the burdens imposed by the bond issue, if any of its strets wear out and need reconstruction the city is without power to have the work done, except from what may remain of its annual levy after paying its general expenses and setting aside the yearly quota to pay interest on the bonds and to provide a sinking fund for their retirement. If nothing should be left then the worn out streets could not be reconstructed at all. As this court views the question, the attempt by the city council in this case to reconstruct the streets in question at the expense of the abutting property owners is not in conflict with the principles enunciated in either of the cases, *supra,* relied upon by appellants or with the provisions of section 3643, Kentucky Statutes, relating thereto. As disclosed by the petition herein, when in 1915 the bond issue was voted and the city, under the ordinance providing therefor,

adopted the plan of paying for the construction of its streets exclusively at its expense, all the requirements of the statute above and all the principles announced in the two cases above were fully complied with. We say that because the petition herein discloses that at that time and from the proceeds of the bond issue then voted the city of Greenville constructed its entire system of streets and highways. Virtually ten years have elapsed since that was done. In the meanwhile it appears that some of the streets constructed in 1916 have worn out and as determined by the city council need reconstruction. That was decreed to be done by the ordinance attacked herein. As viewed by this court, neither the provisions of section 3643, Kentucky Statutes, nor the principles announced in the two cases above prevent the city through its council from proceeding under either of the other two plans of payment for street improvement contained in charters of cities of the fifth class to have its streets reconstructed. Having by the first plan of payment, that is, at the exclusive cost of the city, constructed the entire system of its streets and highways, thereby proceeding under that plan to its completion with uniformity and equality, no sufficient reason suggests itself to this court why the city council may not now after the lapse of ten years proceed to have its streets reconstructed under one of the other plans of payment provided for by the statute above.

We would not be understood as holding by implication that if under the original plan the entire system of streets and highways had not been constructed at the expense of the city the council would be without authority to change the plan of payment. That question is not here. This case is decided upon the facts as presented showing that under the original plan the entire system of the city's streets and highways was constructed.

The facts pleaded as to the city constructing a portion of one of its streets, a citizen or business house paying part, the county part and the city part of the cost are laid to one side as being wholly immaterial. That plan is not provided for by the statutes, and what was then done can not affect the validity of the ordinance proceeding under one of the statutory plans to provide for street improvement at the expense of abutting property owners.

Appellants contest the validity of the ordinance under which the apportionment and assessment of the cost of the street which they seek to enjoin will be made upon the ground that it provides that the city of Greenville shall pay the cost of the street intersections. It is. insisted for appellants that the city council is without authority to so provide, and that its having done so by the ordinance in question renders it invalid. As hereinbefore pointed out, the act of 1893 provided that the cost of constructing the streets, avenues, highways, sewers and public places of cities of the fifth class should be paid exclusively by the city. The act of 1912 amended the original act, vesting city councils of cities of the fifth class with authority to do all such work either at the expense of the city or at the expense of abutting property owners, or one-third at the expense of the city and two-thirds at the expense of abutting property owners. Subsection 1 of the act of 1912 contained this provision: "The cost of constructing or reconstructing the intersections or crossings of streets, avenues and highways shall be at the expense of the city." Subsection 1 of the act of 1912, which since then has been carried as subsection 1 of section 3643, Kentucky Statutes, by the act of 1920 was amended by striking the above quoted provision from it. Construing the effect of the amendment of 1920, this court, in Lawson, et al, v. City of Greenup, 192 Ky. 268, held that the cost of street intersections, as a part of a street improved under the ten-year bond plan, could be assessed against the owners of property abutting upon the street so improved. In this case it does not appear to the court that appellants are in position to complain that the city under the ordinance attacked agreed to pay for street intersections, because in so doing it has relieved them of paying that much of the cost of the street that has been improved. It would seem that the most that can be said of the effect of the amendment of 1920, which eliminated the requirement that cities should pay the cost of street intersections, is that it now is optional with the city council and that if in its discretion it provides by the ordinance that the cost of street intersections as a part of the cost of the street to be improved must be borne by the owners of property abutting upon the street it may do so; or if in its discretion it provides that the city shall pay for them it has the discretion so to do. But however that may be, as said above, appellants are in no position to complain

that by the ordinance in question the city has agreed to pay for the street intersections, because, if it should be held that the city council may not legally so provide, then the cost of the street intersections, as a part of the cost of the street to be improved, necessarily would have to be charged to the abutting property owners.

The judgment of the chancellor in sustaining the demurrer to appellant's petition as amended being in conformity with our opinion herein is affirmed.

Whole court sitting.