### Bonar v. Town of Southgate, et al.

(Decided June 15, 1926.)

## Appeal from Campbell Circuit Court.

Municipal Corporations—Streets, Including Intersections, May be Improved at Cost of Abutting Landowners in Town of Sixth Class Notwithstanding Town had Previously Paid for Improvements at Intersections out of General Expense Fund (Ky. Stats., Secs. 3450, 3643-1, 3706; Const., Secs. 170, 171).—Streets, including intersections, may be improved at cost of abutting landowners in town of sixth class, notwithstanding such town had previously paid for improvements at intersections out of general expense fund, in view of Ky. Stats., section 3706, which is similar to section 3643-1, and in which no distinct period is fixed in which plan of improvement may be changed as in section 3450, since Constitution, sections 170, 171, relative to uniformity of taxation, does not require that plan of street improvement once adopted should become irrevocable.

JOHN WILLIAM HEUVER for appellant.

WILLIAM E. GALAGHER for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS— Affirming.

Appellant, a landowner in Southgate, a town of the sixth class, sought to enjoin that municipality and its board of trustees from making a contract for the reconstruction of certain streets, including street intersections at the cost of the abutting landowners, it being alleged in the petition that prior thereto, street improvement at such intersections had been paid out of the general expense fund of the town, and the property owners charged only with the cost of improving such parts of the streets as abutted on their property; that in thus placing the additional burden of improving the intersections upon the property owners, the new ordinance was dis-

criminatory and denied them uniformity of taxation as guaranteed by sections 170 and 171 of the Constitution.

By their answer defendants admitted that under certain ordinances enacted in the year 1910, all of the streets of the town had been improved and payment made therefor as claimed in the petition; but further alleged that the streets were worn out and needed reconstructing in their entirety; that at the highest limit of taxation permissible under the Constitution all of the revenues of the town are expended in general expense, and that it has no funds with which to pay for improvement of streets; that in order to meet the situation the board had adopted a new and uniform plan of improvement under which they are proceeding to reconstruct all of the streets of the town, including intersections, at the cost of the property owners. The court overruled a demurrer to the answer and plaintiff declining to plead further his petition was dismissed and he has appealed.

Uniformity and equality of taxation are vouchsafed by the constitutional provisions cited, and this court has endeavored to give a practical application to this principle, but it is not essential to uniformity to hold that a plan of street improvement once adopted becomes irrevocable.

True in Tapp v. Johnson, 174 Ky. 532, in referring to plans for street improvements in cities of the third class, it was said: "A city may adopt one plan or the other, but after it has adopted one plan it must adhere to it until it is changed by the legislature."

In that case it appeared that the act of 1910 relating to charters of cities of the third class required the cost of improving street intersections to be paid by the city out of the general expense fund, and it was claimed that the act of 1916, authorizing such cities to either pay for such improvements itself or to order them paid by the abutting property owners was discriminatory. The court upheld the act, and in deciding that the legislature could authorize a change in plans from the mandatory requirements of the act of 1910, denied the charge of discrimination. The words quoted *supra* must have been written with the thought of the 1910 act in mind, and have been intended to apply to it, as the act of 1916, sec. 3450, Ky. Statutes, specifically requires cities of the third class to adopt a uniform system of such improvement and then authorizes such plan to be changed at intervals of ten years or more, and it certainly was not

the intention of the court to hold that it would require additional legislation to authorize such cities to change their plans after the lapse of ten years from their adoption.

In fixing a distinct period in which the council of a city of the third class may not change the general plan or scheme of street improvement, sec. 3450 of the statute is different from sections 3643-1 and 3706, relating to street improvements in towns of the fifth and sixth classes, the two sections last quoted being substantially similar.

In Wickliffe v. City of Greenville, 170 Ky. 528, and City of Tompkinsville v. Miller, 195 Ky. 143, it was held that there should be uniformity of classification under the general scheme of improvement in towns of the fifth class, but the question as to whether a general plan or scheme once adopted could be changed without additional legislation was not considered, and on that point these cases were distinguished in the later case of Shaver v. Rice, 209 Ky. 467. In that case it appeared that in 1915 the city of Greenville constructed its entire system of streets at its own expense by virtue of a bond issue, and in the year 1924 undertook to reconstruct some of the same streets at the cost of the abutting property owners, who raised the same question here involved. After distinguishing the Wickliffe and Miller cases, the court said:

"  . . . Appellant insists that since in 1915, the city council of Greenville adopted the plan of constructing and reconstructing its streets at the expense of the city, the plan then adopted is irrevocable and the city council has no authority to construct its streets under any other plan. . . . As viewed by this court neither the provisions of section 3643, Kentucky Statutes, nor the principle announced in the two cases above prevent the city through its council from proceeding under either of the other two plans of payment for street improvement contained in charters of cities of the fifth class to have its streets reconstructed. Having by the first plan of payment, that is, at the exclusive cost of the city, constructed the entire system of its streets and highways, thereby proceeding under that plan to its completion with uniformity and equality, no sufficient reason suggests itself to this court why the city council may not now after the lapse of ten

years proceed to have its streets reconstructed under one of the other plans of payment provided for by the statute above.''

As no distinction can be drawn between the charters of fifth and sixth class towns in respect to the questions involved that opinion is of controlling force in this case and we see no reason to depart therefrom.

Wherefore, perceiving no error, the judgment is affirmed.