## Boston et al. v. City of Augusta et al.

(Decided May 6, 1930.)

(As Extended, on Denial of Rehearing, June 17, 1930.) .

M. J. HENNESSEY for appellants.

HUBBARD SCHWARTZ, H. O. WILLIAMS and JAMES M. COL-LINS for appellees.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

The appellants are citizens of the city of Augusta, a city of the fifth class. The basis of their complaint, as alleged in their petition against the city, is that by ordinance apportioning the cost of street improvements the city directed that the cost of the improvements of the streets and crossings be assessed against the lots fronting and abutting on the streets and distributing the cost of all the crossings and intersections on the streets against all of the lots instead of assessing the cost of intersections and crossings against the city.

Certain of the appellants have further complained against the city alleging that they own lots fronting on Front street and that their lots are located on the south side of the street, and that all of the property on the north side of the street is owned by the city and is known as a public landing, and that there is land belonging to

the city between the north side of the street and the Ohio river.

Answer was filed by the city raising certain questions, but the case as presented to the lower court was one which called for the proper construction of the law relating to the payment of the cost of intersections and crossings, and relating to the assessment of the entire cost of Front street against the property owners on the south side of the street.

The chancellor below directed a reapportionment of the cost to the extent of requiring the city to pay one-half of the cost of the construction in controversy on Front street along the entire length of the street so improved, including the cost of the intersections. This means that the chancellor held that the owners of the property on the south side of Front street should pay only one half of the cost of the improvements, and that the city should pay the other half. The chancellor held on the other branch of the case that the city, through its council, had authority to apportion all of the cost of intersections and crossings to the property owners. The citizens, making the complaint, have appealed from that part of the judgment upholding the apportionment ordinance requiring the assessment of the cost of intersections and crossings to the property owners, and, by cross-appeal, the city has raised the question as to the correctness of the judgment requiring the city to pay one-half of the cost of the improvements on Front street.

There is considerable controversy as to whether the north edge of Front street is the common line between the street and the Ohio river, or whether there is a strip of land between the street and the river which belongs to the city. We do not think it is material whether one or the other is correct in the contentions made. If there are no abutting property owners on the north side of the street, the cost of the improvements which would have been assessed against such property owners, if there had been any, must be paid by the city because there are no such property owners to pay it. On the other hand, if appellants be right in their contention that the city owns property between the street and the river, one-half of the cost should have been apportioned to the city under the provisions of section 3643-7, Ky. Stats.

Appellees insist, however, that under the authority of the opinion in the case of Town of Central Covington v. Busse, 80 S. W. 210, 25 Ky. Law Rep. 2179, the city

acted within its powers in assessing all of the cost of the improvements on Front street to the property owners on the south side of the street. The case is not in point because there was no effort in that proceeding to assess the entire cost of the improvements of the street to the property owners on one side of the street. The improvement was of their half of the street only. We do not find from the evidence that there was any attempt by the city to improve only one-half of Front street.

The chancellor properly held that the city should pay one-half of the cost of the improvement of Front street, and, on the cross-appeal, the judgment must be affirmed.

If the clear and convincing argument presented by counsel for appellants against the assessment of the cost of intersections and crossings to the property owners had first been made in cases previously decided by this court, a different construction may have been placed on the provisions of subsection 7 of section 3643, Ky. Stats. It is said by counsel that in the case of Lawson et al. v. City of Greenup, 192 Ky. 268, 232 S. W. 383, this court rendered a most weird decision and thereby dropped a monkey wrench into the mechanism of this statute which has interfered with its workability since that opinion. The court held in that case that the city had the power to assess the cost of intersections and crossings against property owners. The question has been before the court since, and the opinion in the Lawson case has been followed. The provisions of section 3706, Ky. St., applying to cities of the sixth class, are similar to, if not identical with, the provisions of section 3643-7 applying to cities of the fifth class. In the case of Bonar v. Town of Southgate, 215 Ky. 133, 284 S. W. 1019, it was held that intersections might be improved at the cost of abutting landowners if the city should so direct. The court followed the opinion in the Lawson case, and the same rule has been announced in the cases of Shaver v. Rice, 209 Ky. 467, 273 S. W. 48, and Hoerth v. City of Sturgis, 221 Ky. 835, 299 S. W. 1074.

Whether the construction of these statutes may, with plausibility, have been determined differently in the first place, the rule is now too firmly fixed to change it. There have been several sessions of the General Assembly since the opinion in the Lawson case was written, and none of the acts dealing with these questions show any dissatisfaction on the part of the General Assembly with the constructions placed upon these sections. Indeed, the

General Assembly has readopted the same language that was construed in the cases cited.

The power of a city of the fifth class to make assessments for street improvement is derived from section 3643-1, which authorizes "the cost and expenses incurred in constructing or reconstructing streets, avenues, highways, sewers and public places" to be paid out of the general fund of the city, or by the owners of the land fronting or abutting thereon, as the city council may in each case determine; or it may order the cost apportioned on the basis of two-thirds to the lot owners and one-third to the city. Section 7 of the original act (Acts 1912, c. 123), had to be construed in connection and consistently with section 1 of the same act. Indeed, section 7 repeated the directions of section 1, and provided that "the cost of any improvement made hereunder shall be assessed equally by the front feet upon the property fronting or abutting, or bordering upon said improvement." It further provided how city property should be assessed, and the assessments paid. Some provision had to be made for the payment of the cost of crossings and intersections, in the event the city council put any part thereof on the city, as it might do under section 1. The amendment of section 7 by the Act of March 22, 1928, did not alter or add to the portion of section 7 respecting the method of assessment or affect it in any manner. Acts 1928, c. 98, p. 370. That amendment merely added thereto provisions respecting the pleadings in an action to enforce a lien, the enforcement of a penalty of 10 per cent. for default in the payment of installments, authorizing the bondholders or the city to maintain an action thereon, and placing a limitation on the total amount of the assessment allowed against any lot so that it should not exceed 50 per cent. of the value thereof.

Section 1 of the original act (section 3643-1), was also amended in 1928 (Acts 1928, c. 93, p. 354), but the amendment merely enlarged, and did not modify or limit, the power of the city council to assess the entire cost of the improvement against the lot owners, or against the general fund, or by apportionment against both on the basis of two-thirds to the owners and one-third to the general fund of the city. The whole matter was left to the discretion of the city council as it had been before. The addition to the power defined by subsection 1 of section 3643 related solely to the 50 per cent. limitation, providing "that an additional one dollar

504

($1.00) per front and abutting foot may be assessed for the constructing and laying of water-mains as provided herein," and authorizing the procedure when the territory was not defined in squares. It will be seen that the construction of the statute adopted by this court in the several cases cited was not affected in any particular by the amendments adopted in 1928. When a statute has been construed by this court and is again adopted without change in the language, it is presumed that the same construction was intended. 25 R. C. L. sec. 297, p. 1075; City of Louisville v. Louisville School Board, 119 Ky. 574, 84 S. W. 729, 27 Ky. Law Rep. 209; Wender Blue Gem Coal Co. v. Louisville Property Co., 137 Ky. 339, 125 S. W. 732; Chatterson v. City of Louisville, 145 Ky. 485, 140 S. W. 647.

The chancellor properly adjudged that the city had the power to apportion the cost of intersections to the abutting property owners, and the judgment is affirmed.

Judgment affirmed on the appeal and cross-appeal.