Robert W. McCOY et al., Appellants,

v.

The CITY OF FLORENCE, Kentucky, etc.,
Appellee.

Court of Appeals of Kentucky.

Dec. 16, 1966.

Sam Neace, Jr., Florence, Stanley Chrisman, Covington, for appellant.

Raymond R. Vincent, Florence, for appellee.

W. MAJOR GARDNER, Special Commissioner.

A declaratory judgment action was brought against the City of Florence, Kentucky, by owners of property in Sunglow Valley Subdivision, a residential community of sixty-two homes annexed to the City of Florence.

Under authority of KRS Chapter 58 the City of Florence enacted an ordinance for the financing, construction, operation and maintenance of a municipal sewer system. The sewer system was constructed before Sunglow Valley Subdivsion was annexed. After the annexation the city determined that the sewer system in the subdivision was inadequate and that a public nuisance existed, and it adopted another ordinance for the construction of a sewer lift station for the purpose of connecting the sewer lines in the subdivision with the municipal sewer system. Construction of the lift station amounted to $31,598.92, and the city levied a special assessment of $509.66 against each

of the sixty-two property owners in the subdivision to pay it.

Appellants contend that the city, after electing to build and maintain a municipal sewer system under KRS Chapter 58, cannot thereafter assess appellants for sewer improvement under KRS Chapter 94 while simultaneously charging them a monthly service rental fee under Chapter 58. They insist this violates the 14th Amendment of the U. S. Constitution.

It is conceded that a nuisance existed and that the city was under obligation to take remedial steps. The age-old problem of limited funds presented itself again. There was not sufficient revenue from the general funds of the city to construct the sewer lift. Who was to pay for it? There appear to be two ways of financing the project: (1) By assessing the individual landowners as provided by Chapter 94, which was done in the instant case, or (2) by paying for the construction out of revenues from the existing system, which would require an increase in rentals and service charges. The latter appears to be authorized by Chapter 58. See Walker v. City of Maysville, 310 Ky. 118, 220 S.W.2d 96.

■ This court has held firmly to the position that although a local assessment imposes an involuntary burden upon the property improved and that the right so to impose it is derived from the taxing power, such a charge is not strictly a tax and does not violate § 171 of the Kentucky Constitution. Krumpelman v. Louisville & Jefferson County Metropolitan Sewer District, Ky., 314 S.W.2d 557, 75 A.L.R.2d 1110; Robertson v. City of Danville, Ky., 291 S.W.2d 816; Baker v. City of Princeton, 226 Ky. 409, 11 S.W.2d 94. Appellants argue broadly that their rights under the 14th Amendment of the U. S. Constitution have been violated, but they do not pinpoint the violation nor do they cite any authority supporting their contention. Their main argument is that the city having once set up a formula by which the sewer system was to be constructed, operated and extended, it could not change that method by placing an unequal burden upon some of the users. In support of this position they cite City of Tompkinsville v. Miller, 195 Ky. 143, 241 S.W. 809, and Wickliffe v. City of Greenville, 170 Ky. 528, 186 S.W. 476. While these cases contain statements seemingly upholding appellants' position, this court in Shaver v. Rice, 209 Ky. 467, 273 S.W. 48, pointed out that a strict adherence to that view could result in an intolerable situation As said in the *Shaver* case:

"To adopt appellants' view upon that question would be to hold that, when a city of the fifth class has reached the limit of a bonded indebtedness, under § 158 of the Constitution, although in expending the proceeds of the bond issue the city may have constructed its entire system of streets, thus distributing with uniformity and equality the benefits derived from and the burdens imposed by the bond issue, if any of its streets wear out and need reconstruction, the city is without power to have the work done, except from what may remain of its annual levy after paying its general expenses and setting aside the yearly quota to pay interest on the bonds and to provide a sinking fund for their retirement. If nothing should be left then, the worn-out streets could not be reconstructed at all."

In the *Shaver* case this court upheld the city's plan of financing the reconstruction of streets, which plan was different from the plan of payment for the original street improvement.

■ There is a limited persuasion in appellants' argument that when they pay the same rental fees as the users in the city proper plus the special assessment an unequal burden is imposed upon them. The argument on the other side might be that to require all the users to absorb the cost of the sewer lift station by increasing the rental fee would cause them to help pay for something that benefits only the residents of Sunglow Valley Subdivision. It

would be impossible and certainly impracticable to reach a formula by which every person pays in exact proportion to the benefit derived. We think that a city must be permitted considerable latitude within the framework of the statutes and the Constitution in solving its fiscal problems.

It appears to us that the city of Florence was within its legal right in electing to proceed under KRS Chapter 94.

The judgment is affirmed.